## CRUMP ET AL. *vs.* McMURTRY.

A. sold a tract of land to B. and took his notes, without any security, for the payment of the purchase money, and retaining only the lien on the land given by him, to secure the payment of the notes. Apprehensive that the land sold would be insufficient to pay the purchase money, A. instituted an action on the note for the second instalment, and attached certain personal property of B., of the value of $1,000, who, in consideration of the release of the property attached, executed a bond, with sureties to A. for $1,000, as collateral security for a like amount for the note on which the suit was brought. Judgment was then rendered for the amount due on the note.

 At a subsequent term of the court, judgment was obtained on the third note. Upon these judgments, executions were issued, and the tract of land levied upon and sold. The judgment creditor applied the proceeds of the sale, first, to the satisfaction of the execution issued on the last judgment, and the remainder was credited on the execution issued on the first judgment, leaving a sum exceeding the amount of the bond due on such execution.

 The sureties in the bond, against whom judgment had been obtained at law, filed their bill for an injunction, &c., contending that, as the judgment for the amount of the second instalment was a lien upon the land sold, they had a right to be substituted, in relation to this lien, in the place of A., the judgment creditor, who, having discharged the land from the lien by the sale under the execution, thereby released the sureties in the bond. *Held:*

1. That the sureties in the bond had no right to be substituted, in relation to the lien on the land, in the place of the judgment creditor; that A., in giving up the lien of his attachment for the bond, became a purchaser of the bond for a valuable consideration; that the doctrine of substitution was not applicable to a case like the present, where a creditor having a security for his debt, but fearing that it will prove insufficient, obtains additional security. To apply the doctrine of substitution to such a case would defeat the obvious intention of the creditor in obtaining such additional security.

2. The term *collateral*, applied to the security of a third person, does not, *ex vi termini*, confer a right in equity to substitution. Its signification is not technical, and as used by the parties to this suit merely meant *additional* or *supplemental*.

3. The rule in equity is, that if an individual is security for a debt, and the creditor has a lien on property as collateral security for the payment of the debt, and the surety discharges the obligation of his principal, he should be substituted for the creditor, and have satisfaction out of the property collaterally bound for the payment of the debt. The present is a case where a surety is not asking to be substituted for a creditor who has collateral security for his debt, but one security is demanding to be substituted for the creditor, in relation to another security, when the effect will be to deprive the creditor of one of his resources, and thereby cause a partial loss of his debt.

## APPEAL from Callaway Circuit Court.

Leonard *and* Ansell, *for Appellants.*

FIRST VIEW.

 By the agreement of June, 1838, between McMurtry and McClelland, the $1,000 bond of January, 1838, became and was collateral security for a similar amount of the $1,920 note payable in 1837.

 And although the sureties upon the $1,000 bond were not parties to the agreement of June, 1838, yet, by the rules of equity, they are as fully entitled to every

benefit under it as if they had actually executed it themselves.—1 Story's Equity, 320, 321; Hayes *vs.* Ward, 4 Johns. Chan. Reports, 123; Mayhen *vs.* Crocket, 2 Swonst. Rep., 186.

Assuming these two propositions to be true, the complainants take three positions, and insist, that under either of them they are entitled to relief.

#### FIRST POSITION.

1. The satisfaction of the judgment of October, 1838, effected by the proceedings of the sheriff of Callaway county, extinguished the $1,000 bond.

2. And this extinguishment of the judgment of October, 1838, is not annulled by the proceedings of the Callaway Circuit Court quashing a part of the sheriff's return on the execution.— Schober *vs.* Dedman, 2 Littell's Rep., 116; Trigg *vs.* Lewis' Executors, 3 Littell's Rep., 132, 133.

#### SECOND POSITION.

1. The judgment of October, 1838, was a lien on the land sold, and therefore

2. The sureties on the $1,000 bond had a right to be substituted in relation to this entitled to payment in preference to the judgment of November, 1839. lien, in the place of McMurtry, the judgment creditor.— Watson and Others *vs.* Kenney, 3 Leigh's Rep., 272; Classon *vs.* Morris, 10 Johns. Rep., 539; Theobald on Principal and Security, 186; Parsons *vs.* Briddock, 608.

3. And McMurtry having, by the sale under execution, discharged the land from the lien, thereby released the securities.—1 Story's Equity, 322–480, Cheeseborough *vs.* Millard, 1 Johns. Rep., 413; Theobald on Principle and Security, 95. (This book is marked on the back, "Principal and Agent.")

#### THIRD POSITION.

1. By the express terms of the agreement of June, 1838, an equitable lien upon the land was created for the security of the two notes, upon which the judgment of October, 1838, was recovered.

2. The sureties on the $1,000 bond had a right to be substituted in relation to this equitable lien in the place of the creditor, McMurtry.

3. And McMurtry having, by his execution sale, discharged the land from this lien, thereby exonerated the sureties.

#### SECOND VIEW.

Admitting the $1,000 bond not to be collateral security for a portion of the $1,920 note payable in 1837, but altogether an independent obligation, yet the counsel for the complainants insist, that they are entitled to relief upon the following grounds :—

1st: The judgment of July, 1839, upon the $1,000 bond, was a lien on the land sold, and entitled to payment before the judgment of November, 1839.

2nd: The complainants, who are admitted to be McClelland's securities on the $1,000 bond, have a right to be substituted in relation to this lien, in the place of McMurtry, the judgment creditor.

3rd: And McMurtry having, by the execution sale made at his instance, discharged the land from this lien, thereby released the securities.

*Crump et al.* vs. *McMurtry.*

Todd *and* Sheeley, *for Appellee.*

1. The note in controversy was given upon consideration of releasing the attachment, and surrendering part of the attached property, and forbearing the debt; such consideration is legal, and the contract an absolute, original undertaking, not conditional nor collateral.

2. The contract, for its being a payment for and to be credited upon a note held by defendant, upon the principal obligor, for a different consideration, is a discharge of that sum; and will be considered as *done* in equity; and such contract will not be impaired, or varied by parol proof or declarations, after its execution.

3. The fact of the sheriff, against the consent and instructions of the plaintiff in the execution upon the judgment for the larger note, upon which the credit was to be endorsed, out of money made upon other executions between the same parties, and to which he was directed to apply the money, will not, in equity, cancel the contract of the application of the payment of the small note, nor discharge the obligor of such note.

4. The court out of which the execution issued having quashed the return of satisfaction is obligatory upon the parties to the execution, and the record of such fact cannot be impeached by circumstantial evidence, by a record in another case, or by any extrinsic, written, or parol evidence; and by none but parties or privies to it.

5. No decree can be given for complainants: that they are discharged from the note in controversy, by reasons of any contract made by obligee with principal obligor of the note in controversy, to delay payment of the principal note, or the note for future instalment, because there is no allegation of the contract alleged, being without the consent of the securities, nor proof of any such facts, neither is there any allegation or charge of any facts constituting a delay.

6. Neither can a decree be rendered for complainants, substituting them to any equitable lien of the defendant for the purchase money on the original contract; because they do not allege, charge or prove, that they paid the note they profess to have given as collateral security to the note in the original contract.

7. If the original note was to be credited by the note with personal security, or if it be a note as collateral security for it, it operates as a discharge *pro tanto* of the purchase money, and releases the lien of vendor upon the land, and no lien can be remitted to the complainants.

The complainants were not collateral securities to the original note for the purchase money, or any part, nor privies thereto; having made no contract to guarantee or assume the payment of it, or any part, but for its extinction.

8. If the contract of June, 1838, of McMurtry and McClelland, revived the extinguished lien for the purchase money, then the complainants, claiming a substitution thereto under that contract, must take it subject to all the terms.

If, under any consideration, they be entitled to substitution, they have no equity to take precedence or equality with vendor, but must be postponed; for the vendor enforced the payment of his lien fairly, and without prejudice to complainants.

Scott, J., *delivered the opinion of the Court.*

This was a bill in chancery filed by T. Crump, N. E. Branham, and others, securities in a bond executed by them, together with J. M. McClelland and Compton, to Levi McMurtry. McClelland, the principal in the bond, and Compton, one of the securities, were made defendants together with McMurtry. The facts, as stated in the bill, are as follows: McMurtry sold a tract of land to McClelland for $5,760, to be paid by three equal instalments of $1,920 each, on the 25th October, 1836, 1837, and 1838. These instalments were secured by the notes of McClelland. Most of the first instalment was paid, and in January, 1838, McMurtry commenced suit by attachment for the recovery of the balance of the first instalment and the second instalment. The attachment was levied on nine horses and other personal property of McClelland. It was afterwards agreed between McMurtry and McClelland, that if McClelland would secure a thousand dollars of the note for the payment of the second instalment then in suit, with personal security bearing ten per cent. interest, McMurtry would accept the same in lieu of, and as collateral security for, an equal amount of said note, and would release the horses from the attachment. Accordingly, afterwards, on the 4th January, McClelland, as principal, and the complainants, together with the defendant Compton, as securities, executed their bond to McMurtry, due twelve months after date, with ten per cent. interest. This bond was delivered to McMurtry, who released the horses from the attachment. After, in June, 1838, it was agreed between Mc-Murtry and McClelland, that the latter should withdraw his plea in abatement of the attachment, and plead to the merits, and that McMurtry should pay all the costs incurred by the attachment; that, at the ensuing term of the court, McMurtry should have judgment for the balance due on the two notes, after allowing all credits to which McClelland, on settlement, was entitled; that the personal property then subject to the attachment should be sold, and the proceeds applied to the satisfaction of the judgment to be rendered at the ensuing term; that, if the bond for $1,000, of the 4th January, 1838, should be paid, the amount should be credited upon the judgment to be taken, and that the said bond was collateral security for so much of the second instalment; that the judgment to be taken, when satisfied, would operate as an extinguishment of said bond, and that the land sold was bound in equity for the two notes then in suit, but should not be sold under execution upon the judgment to be obtained in the suit then pending. In pursuance of this agreement at the October term, 1838, judgment was rendered against McClelland for $1,994 95, besides costs. At the July term, 1839, judgment was obtained on the bond for $1,000, against McClelland and his securities; and at the November term of the same year, a recovery was had on the note for the last instalment. The proceeds of the sale of the personal property taken under the attachment, amounting to $480, was applied in part satisfaction of the judgment of October term, 1838. In April, 1840, McMurtry sued out executions on the three judgments, by virtue of which the land sold by McMurtry to McClelland was levied upon, and, at the July term, sold for $2,400. This sum was, by the sheriff, first applied in satisfaction of the judgment of October, 1838, the execution

*Crump et al. vs. McMurtry.*

on which was returned satisfied, and the residue, amounting to $607, was applied to the judgment on the note for the last instalment. The prayer of the bill is, that the judgment on the bond for $1,000 be declared to be extinguished, and the collection thereof be perpetually enjoined and for general relief.

McMurtry answers, and denies that the bond for $1,000 was given or received as collateral security for a like amount of the note for the second instalment. He denies that he authorized the sheriff to apply the money arising from the sale of the land in the manner it was done, and avers, that he instructed the sheriff to apply it, first, in satisfaction of the judgment on the note for the last instalment, and the residue to the judgment of October of 1838. He further states, that he instituted proceedings in the Callaway Circuit Court to correct and amend the returns of the sheriff to the several executions, which resulted in an order of the court, setting aside so much of the return on the execution on the judgment of October, 1838, as states that it is returned satisfied; and so much of the return on the execution issued on the judgment rendered in the suit on the note for the last instalment, as applies the residue of the money arising from the sale of the land, is also set aside, leaving the facts of the levy and sale contained in the return on the execution on the judgment of October, 1838, remaining on the same. The other facts charged in the bill are admitted by McMurtry. McClelland, in his answer, admitted the facts charged in the bill, and the same were taken as confessed against Compton.

After the execution of the bond of the 4th January, 1838, for $1,000, by McClelland and his securities, McClelland took from McMurtry the following receipt, viz. :—" Received of Mr. J. W. McClelland a bond, with the following securities : T. Crump, N. E. Branham, V. D. Boone, B. G. D. Mosley, and Compton — for $1,000, which I promise to credit J. W. McClelland's bond that was due to me in October, 1837.                                        " LEVI MCMURTRY."

The following is so much of the agreement of June, 1838, referred to in the bill, as is deemed material. If McClelland and his securities will further secure, if McMurtry requires it when due, a note for $1,000, its payment shall be extended at same interest due in January next, for twelve months. If it be paid, it is to be a credit on the amount of the above-named judgment, (the judgment of October, 1838,) as it stands as collateral security to the note sued upon for that amount, and McMurtry is not to sell McClelland's land in Callaway county, now in McClelland's possession, under the execution on the judgment to be given at the next term, this land being now bound in equity for the payment of the notes sued upon. If the judgment to be rendered at the next term be fully paid, it extinguishes the note mentioned above for the payment of a $1,000.

On the hearing, the court entered a decree dismissing the bill, from which the complainants appealed.

The complainants insist, that by the agreement of June, 1838, between McMurtry and McClelland, the bond for a thousand dollars became collateral security for a like amount of the second instalment, and that although the securities to the bond were not parties to that agreement, yet in equity they are entitled to all advantages secured by it, as fully as though they had executed it. After asserting this prin-

ciple, they maintain, that the judgment of October, 1838, was a lien on the land sold, and therefore entiled to payment in preference to the judgment of November, 1839 ; that the securities in the bond for $1,000 had a right to be substituted, in relation to this lien, in the place of McMurtry, the judgment creditor; and Mc-Murtry, by the sale under the execution, having discharged the land from the lien, thereby released the sureties.

It is a clear principle in equity, that if a creditor has personal security for a debt, and also an incumbrance on property of the debtor, to secure the payment of it, if the surety satisfies the debt, he shall be substituted for the creditor, and have an indemnity out of the property which was ·collaterally bound to secure the same ; and if the creditor, acting in bad faith, by any means, destroys this recourse of the surety, he will thereby be discharged.   As the surety, by paying the debt of his principal, becomes in turn a creditor of the debtor, it is nothing but equity that he should seek his indemnity out of the property which had been appropriated for the payment of the debt which he has discharged.  This principle is one of pure equity, and is founded on the dictates of refined justice.   It is not intended to be applied in all cases where there is a collateral security for a debt, but in those only in which justice demands its application.   To apply it indiscriminately, without regard to circumstances, would be to convert a mild rule of equity into one of stern law, working its way regardless of the injustice which may follow.—1 Johns. Chan. Rep , 409.

It is above stated, that the complainants assume that the judgment of October, 1838, was a lien upon the land sold, and entitled to priority of satisfaction.   That judgment may have been a lien on the land, but it could not displace that which existed anterior to its rendition.   It seems to be well settled, that a vendor of real estate retains a lien for the purchase money on the estate sold, whether he has executed a conveyance or not.   This principle is supported by a current of authority which cannot be resisted.   (Cole *vs.* Scott, 2 Wash.; 2 Story's Equity sec. 12, 13 ; 2 Sugden on Vendors, 57.)   It will follow, then, that although the judgment of October, 1838, was a lien, yet it attached subsequently to the prior lien for the amount of the purchase money secured by the note for the last instalment, and notwithstanding that judgment, the land was bound for all the purchase money remaining unpaid.   McMurtry might have satisfied the judgment of October, 1838, by a sale of the land, and thereby extinguished the bond of the complainants. But this was not done.   That judgment remained unpaid until a judgment was rendered on the note for the last instalment, and having two judgments, they were subject to his control, and he might have the money arising from the sale of the land under them applied as he thought proper, unless the rights of third persons were concerned.   This renders necessary the inquiry whether the complainants, as sureties on the bond for $1,000, had a right to interfere and control McMurtry in the application of the proceeds of the sale of land.   If such a right exists, it must have its foundation in the doctrine of substitution, or it must be by contract.

·The principle of equity is this : if an individual is security for a debt, and the creditor has a lien on property as collateral security for the payment of that debt, if the surety discharges the obligation of his principal, he shall be substituted for the

creditor, and have satisfaction out of the property collaterally bound for the payment of the debt. The case under consideration does not fall within this principle. A surety is not asking to be substituted for a creditor who has collateral security for his debt, but one security is demanding to be substituted for the creditor in relation to another security when the effect will be to deprive the creditor of one of his resources, and thereby cause a partial loss of his debt. A vendor sells a tract of land, and takes three notes of the vendee for the purchase money, payable in annual instalments. Taking no security other than the notes of the vendee for the purchase money, he retains the lien given by law to secure its payment. Apprehensive that the estate sold will be insufficient to pay the purchase money, he institutes an action on the note for the second instalment, and attaches property of the vendee worth a thousand dollars, and in consideration of the release of that property from the attachment, a bond is given for a thousand dollars as security for a like amount of the note on which the suit is brought. This is the case of a creditor having a security for his debt, and fearing that it will prove insufficient, he obtains supplemental security, and then the supplemental security asks to be substituted in the place of the creditor as to the other security, thereby defeating every advantage the creditor had obtained by taking the supplemental security.

In reviewing this transaction, will not a court of equity regard the bond of the complainants as the property for which it was substituted? But for the bond of the complainants, McMurtry would have had the horses as additional security for his debt; and can the substitution of the bond for the horses make any difference in equity? The complainants, by their interference, induced McMurtry to release a lien on property worth the amount of their bond, and now that they seek to be discharged from the obligation, some equitable circumstance should be shown other than that the security into which they entered was termed *collateral.*

If this case furnishes no circumstances which would warrant a court of equity in extending to the complainants a right to substitution, is there anything contained in the covenant between the parties of June, 1838, which will give them this right? That instrument recites, that the bond of the complainants stands as collateral security to the note sued upon for that amount; that the land sold is now bound in equity for the payment of the notes in suit; and that, if the judgment to be rendered on the notes be fully paid, the bond of the complainants will be extinguished; and it is agreed that the lands sold by McMurtry to McClelland shall not be sold to satisfy the judgment to be rendered on the notes then in suit.

McMurtry, fearful that the land sold would not be a sufficient security for the purchase money, instituted proceedings, by attachment, for the recovery of a part of the first, and the whole of the second, instalment. Property other than the land, to the amount of a thousand dollars, is attached; and the complainants, in order to obtain a release of this property from the attachment, that it might be sold by McClelland, and the proceeds paid to McMurtry, entered into the bond which is the subject of this controversy. Afterwards, an argument is entered into, between McMurtry and McClelland, in which the recitals and stipulations above set forth are contained. It is under this agreement that the complainants seek relief against the bond which they have executed. It may be remarked on the terms of

the instrument, that the parties do not contract, in express words, that the bond of the complainants shall be collateral security, and that the land sold shall be bound in equity for the payment of the notes sued upon; but these are simply announced as facts. What could have been the object of the parties in making these declarations? The bond of the complainants was given to secure part payment of a note on which suit had been brought; and unless it was declared to be merely collateral security, the whole of the purchase money might have been recovered by McMurtry; and, afterwards, suit might have been instituted for the recovery of the amount secured by the bond of the complainants. This view of the matter is strengthened by the fact, that the parties stipulated that the land should not be sold under the judgment to be obtained on the notes in suit. If it was designed to place the note for the second instalment—for part of which the complainants' bond was collateral security—in such a situation as to have a priority of all the other notes, why stipulate that the land should not be sold for its payment? Was not the effect of that stipulation to leave the land undisturbed for the payment of the last instalment? The term "collateral," applied to the security of a third person, does not *ex vi termini* confer a right in equity to substitution. Its signification is not technical; and, as used by the parties to the covenant, in our opinion, it means additional, or supplemental. Can we suppose that, by the use of that term, it was designed to deprive McMurtry of all the advantages he had obtained by his diligence, render the bond of the complainants of no avail whatever, and place McMurtry where he was before he obtained it? It is certainly competent for a party to do such an act: any one may relinquish or release any right conferred on him by law or contract; but when we see an individual sedulously employed in securing a debt, and, just as he has obtained his end, to believe that he would relinquish it without any consideration, we should have clear and manifest language indicative of such an intent. There is nothing in the argument which would warrant us in adopting the opinion that such was the understanding of the parties. How can it be said that a right to substitution was contracted for on behalf of the complainants, when, by the payment of the bond which they executed, the lien on the land for that amount would be extinguished? What was there to be substituted to?

We have seen that the judgment of October, 1838, had no priority of the note for the last instalment; and the reason why that priority does not exist has been shown. The recital of the fact of the existence of a lien, to the amount of the two notes in suit, admitting it amounted to a covenant that the land should be equitably bound for that amount, might have the effect to preserve the lien of McMurtry on the land sold for the amount of the bond of the complainants, as otherwise such a security might be held a discharge of the lien *pro tanto.* As the existence of a lien somewhat depends on the contract and understanding of the parties to the sale, such a recital would show that it was not abandoned. (Story's Equity, sec. 1,226.) Chancellor Kent has summed up the general doctrine on this subject, as well as the exceptions to it, with great clearness. He holds, that the better opinion is— that taking a note, bond, or covenant, of the vendee himself, is not a waiver of the lien, for such instruments are only the ordinary evidence of a debt; but that tak-

ing a note, bill or bond, with distinct security, or taking a distinct security exclusively by itself, either in the shape of real or personal property, from the vendee, or taking the responsibility of a third person, is evidence that the vendor does not repose upon the lien, but upon an independent security, and it discharges the lien. These rules he deduces from a review of the American as well as the English authorities.    But although the effect of the recital was to preserve the lien of McMurtry, yet both parties knew that the land was already subject to the lien of the unpaid purchase money; and, consequently, the recital could not give the lien for the second instalment a priority over the lien on the land for the last instalment. In this respect the covenant places the complainants in no better situation than the judgment of October, 1838.

As to the point, that the judgment on the bond of the complainants was prior to the judgment on the note for the last instalment, and therefore entitled to be first paid, we deem it answered in what has been said in relation to the lien of the judgment of October, 1838.

Had the bond of the complainants been made a collateral security for the payment of the whole debt, or for the last instalment, none of the difficulties with which this cause is surrounded would have arisen: the transaction would have been plain, and easily comprehended.    As it is, its peculiar circumstances render it unnecessary to determine the abstract question — whether, if a whole debt, payable in three instalments, is secured by property which is insufficient to satisfy it, and a surety, being bound for the first or second instalment of the debt, pays the same, whether he is entitled to any, or what, relief in equity, in respect to the property bound for the debt ?    For in this transaction, the complainants, so far as McMurtry is concerned, in whatever relation they may stand to McClelland, cannot be regarded as sureties.    This is not like the case of one voluntarily becoming the surety of another for the payment of a debt: McMurtry purchased the bond of the complainants for a valuable consideration: it was given for the horses which he held for the payment of his debt, and justice and equity constrain us to regard it merely as the representative of the property for which it was substituted.    We know of no principle of equity, arising out of the doctrine of contribution or substitution created for the protection of sureties, which can enable us to extend to the complainants the relief they ask.

As to the point, that the judgment of October, 1838, is satisfied by the levy and sale of the land under it, we are of the opinion that the action of the court below, in relation to the returns of the sheriff on the several executions, is sufficient to show that the application of the proceeds of the land is yet to be made.    Enough of the several returns was quashed to show that the court intended to set aside the application made by the sheriff, and to leave the matter open.    Had not that been the design of the court, as manifested by its action, it is hard to conceive why the complainants should be apellants here, asking relief in this form.    Surely the court understood the effect of its own orders! and why should we give them a more limited construction than was intended by the power making them ?

Decree affirmed.