Burks, J.,
delivered the opinion of the court.
That the negotiable note of June 1, 1874, was given for the first instalment of purchase money for the tract of land sold by the appellant, Grubb, to the appellee, George W. Wysor, Jr.—that the appellee, George W. Wysor, ■Sr., was surety for the latter on said note—that the note *129 was assigned by Grubb, the payee, to McCormick, and by the latter endorsed to Hurst, Purnell & Co., and after protest at maturity for non-payment, was paid to the holder by the surety, are facts not questioned in this case.
The averments in Grubb’s answer to the bill, that the note was paid by the complainant, not as surety, but on his own account, or if paid by him as surety, that he had received satisfaction from his principal for the amount so paid, are affirmative statements and not supported by the proofs. So that the only question left for decision by this court is, whether the surety is entitled to the substitution and priority granted him by the decree of October 12, 1877.
The subrogation of the suretj for indemnity, on pay*ment of the debt of his principal, to all the rights, remedies and securities of the creditor against the principal for the debt, is a familiar doctrine of courts of chancery everywhere. It is founded, it is said, not upon contract, but upon a principle of natural equity and justice. “It is a mode,” observes Judge Strong, “which equity adopts to compel the ultimate discharge of the debt by him who in good conscience ought to pay it, and to relieve him whom none but the creditor could ask to pay. To effect this, the latter is allowed to take the place of the creditor, and make use of all the creditor’s securities as if they were his own.” McCormick v. Irwin, 11 Casey, 111, 117.
But this principle has no application where its enforcement would be unjust and inequitable. It may be invoked for indemnity, and sometimes, and on certain conditions, for exoneration, by a surety against his principal, but not in a case where it would operate to the prejudice of the creditor. For instance, it has been held by one, whose judgments always command, as they deserve, the highest respect, that the surety, upon paying the debt, is entitled to all the securities held by the creditor, “provided the creditor has no lien upon them or right to make them *130 available against the principal debtor, to enforce the payment of a debt different from that which the surety has But if the creditor has such a right, and one arising out of the transaction itself, of which the surety-ship forms a part, then the right of the surety to the benefit of the securities is subordinate to the right of the creditor to make them available for the payment of his other claims, and can only be made available after the paramount right is satisfied.” Sir John Romilly, M. R., in Farebrother v. Wodenhouse, 23 Beav. R. 18, cited in Brandt on Suretyship, §279.
The principle here enunciated would apply, as it seems to us, with equal if not greater force, to a case where the creditor has a security for an entire debt, payable in instalments, for one only of which the surety is personally bound. To allow the surety, on payment of this instalment, to have the benefit of the security, which was provided for the entire debt, and postpone the creditor until the surety is indemnified, would be, in effect, in a' case where the security is insufficient to pay the whole debt, to require the creditor to indemnify, instead of the principal debtor; for, in the case supposed, the creditor, has the prior, subsisting paramount right to resort to the security until his entire debt is satisfied.
Suelfis the case in judgment. Grubb, by written contract, stipulated to sell his tract of land to "Wysor (the younger) at the price of $3,199, payable in three equal annual interest-bearing instalments, and expressly retained the title until all the purchase money should be paid. One month thereafter, the negotiable note was taken for the instalment first to be paid. The land, no doubt, was deemed inadequate security for the payment of the price agreed upon, and the object of the note was to strengthen the security. The land' stood as security for the entire purchase money, and the note as additional security for one instalment. If the view of the circuit *131 court prevails, what was intended as further security amounts practically to no security whatever; for, by substitution, as applied in the first decree, and the priority-therein given to the surety, and by the sale under that decree, the whole tract of land has been taken to indemnify the surety for the payment of the note, and the creditor is left without any security for the two-thirds of the puz’ehase money due him and unpaid. This cannot be equity. The surety will be permitted to occupy the place of the creditor, when the latter has no longer occasion to hold it for his own protection, but equity will never displace him, to his prejudice, merely to give the surety a better looting.
The assignment by Grubb carried with it to his assignee so much of the lien on the land as was necessary to secure the payment of the note assigned, and, as between Grubb and his assignee, a prior right to satisfaction out of the proceeds of sale. Such is the elfoct of the decisions of this court in McClintic v. Wise’s adm'rs and others, 25 Gratt. 448, and Gordon v. Fitzhugh and others, 27 Gratt. 835. But these decisions only settle the rights and priorities, growing out of assignment, between the original assignor and assignee, and among successive assignees of debtshaving a common security. These equities of the parties inter sese are not available to the surety by subrogation in a case like the present, where the rights of the creditor will be impaired thereby. On the contrary, the case presented is one in which the doctrine of marshaling of securities for the benefit of the creditor has application. If the assignee, holding the note unpaid, had filed his bill to have satisfaction out of the land, as he held two securities and the vendor only one, equity would either have required him in the first instance to resort to the security of the note before coming upon the land, or if permitted to obtain satisfaction out of the land, and that proved insufficient to pay both debts, he would have been required to turn over the *132 note to the vendor as a subsisting security for the re-payment, as far as necessasy, of what had been taken by the -assignee'out of the land. It is apparent, therefore,, that payment of the note by the surety could give him no equity to be let in upon the land, until the vendor’s debt has been fully paid.
The land was sold under the decree of October 12,1877, and purchased by the surety at a price not quite sufficient to indemnify him for the amount he paid for his principal. It appears by the report of the commissioner, that the sale was made on the 20th day of May, 1878. Grubb excepted to the report, on the ground that the land did not sell for its value, and he made an upset bid of $1,500, and asked a day to make good his bid. The decree of August 8, 1878, gives him sixty days to make good his bid in the mode prescribed by the decree, and if the terms should be complied with, orders a resale of the land at the upset bid ; if the terms should not be complied with, it orders the report to stand confirmed.
The decree of October 12, 1877, must be reversed so far as it gives priority to the appellee, George W. Wysor, Sr. It is not otherwise erroneous, as the said Wysor is entitled, by substitution, to a lien on the land subordinate to the paramount lien of the appellant, and he had the right to bring his bill to enforce his lien subject to -the superior rights of the appellant. The sale of the land was therefore properly ordered; and if it had been error to order the sale, and for such error the decree should be wholly reversed, if the conditional confirmation of the report by the decree of August 8, 1878, has become absolute, such reversal would not, under the statute, affect the rights of the purchaser, as the sale was” made six months from the date of the decree ordering it. (lode of 1873, oh. 174,-§ 11.
The cause will be remanded to the circuit court, with directions to order an account of the purchase money, yet *133 unpaid and owing to the appellant, and when the amount thereof has been ascertained, if the conditional confirmation of the sale by the decree of the 8th of August, 1878, has become absolute, to direct the payment of said amount out of the proceeds of said sale, when collected, and after said amount has been fully paid, to apply the residue, if any, of said proceeds towards the satisfaction of the sum recovered by the said. George W. Wysor, Sr., against the said George W. Wysor, Jr., uuder the decree of October 12, 1877; and if the confirmation of the sale by the decree of August 8, 1878, has not become absolute, the said circuit court will be further directed to cause the land to be resold, and to apply the proceeds of the resale in the order and in the manner hereinbefore indicated.
The decree was as follows:
This day came again the parties, by their counsel, and the court, having maturely considered the transcript of the record of the decree aforesaid and the arguments of counsel, is of opinion, for reasons stated in writing and filed with the record, that while the appellee, George W. Wysor, Sr., is entitled, by substitution, to a lien on the tract of land in the bill mentioned for the amount of money p'aid by him as surety for the appellee, George W. Wysor, Jr., yet that such lien is subordinate to the lien of the appellant on said land for the balance of purchase money owing by said George W. Wysor, Jr., to the appellant, under the written contract between them, bearing date on the 5th day of May, 1874, set out in the record, and that so much of the decree aforesaid of the said circuit court, rendered on the 12th day of October, 1877, as adjudges, orders and decrees that the said lien of the said George W. Wysor, Sr., is entitled to priority over the said lien of the appellant for the unpaid balance of purchase money owing to the appellant, is erroneous.
*134 And the court is further of opinion that there is no error in the decree aforesaid of said circuit court rendered on the 8th day of August, 1878. Therefore, it is decreed and ordered that the said decree of the 8th of August, 1878, be affirmed, and that so much of the said decree of the 12th of October, 1877, as is hereinbefore declared to be erroneous, be reversed and annulled, and the residue thereof be affirmed, and that the appellant recover against the appellees his costs by him expended in the prosecution of his appeal aforesaid here. And this cause is remanded to the said circuit court with directions to order an account of the purchase money owing to the appellant by the said George W. Wysor, Jr., under the contract aforesaid between them; and when the amount thereof has been ascertained, if the conditional confirmation of the sale by the said decree of the 8th of August, 1878, has become absolute, to order the payment of the said amount to the appellant out of the proceeds of said sale, when collected, and after such payment to apply the residue, if any, of said proceeds towards the satisfaction of the sum recovered by the said George W. Wysor, Sr., against the said George W. Wysor, Jr., by the' said decree of the 12th day of October, 1877; and, if the conditional confirmation of the sale by the said decree of the 8th of August, 1878, has not become absolute, the said circuit court is further directed to cause the said land to be resold and apply the proceeds of such resale in the same manner and in the same order as hereinbefore indicated; and the said circuit court shall take such further proceedings in said cause as may be necessary or proper, in order to a final decree, in conformity with the opinion and directions hereinbefore expressed and given: all of which is ordered to be certified to the said circuit court of Carroll county.
Decree reversed;