## 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉.

BRIGHTHOPE RAILWAY CO. v. ROGERS, FOR, &C.

March 31, 1881.

1. SUBROGATION—*Insurer.*—R's wood, piled on line of B railway and insured with W F Insurance Co., is destroyed by the Railway Co.'s negligence, and paid for by the Insurance Co.

HELD:

The latter is subrogated to R's right of action against the Railway to the extent of the amount paid under the policy.

2. IDEM—*Release.*—Action against the Railway Co. for the amount paid under the policy, in the name of R, for use of the Insurance Co., can not be released by R, and a plea setting up such a release as a defence to the action, is properly rejected.

3. EVIDENCE.—Testimony is admissible to prove that the locomotive which fired R's wood, had, on other occasions, emitted sparks and set fire to property along the railway, in order to show negligence and defects of machinery.

4. RAILWAY COMPANY is liable where fire is attributable to the negligence of its agents, or to its want of proper machinery and spark arresters, or to the accumulation of combustible matter along its line.

5. IDEM.—Employing an agency so powerful and dangerous as steam, a railway company is liable for all injuries caused by its omission to employ the best mechanical contrivances and inventions in known use, to prevent burning private property by the escape of sparks and coals from its engines.

6. GROSS NEGLIGENCE.—The circumstances disclosed by the record constitute a case of gross negligence.

7. INSTRUCTIONS.—It is the settled rule, that though an instruction may be erroneous, this court will not, for that reason, grant a new trial, if it be manifest that the excepting party could not have been prejudiced by it.

Writ of error to judgment of circuit court of Chesterfield county, in action of George J. Rogers, suing for benefit of the Watertown Fire Insurance Company, of New York,

against the Brighthope Railway Company. Rogers had piled on the line of the railway company wood, insured in that insurance company by two policies aggregating $1,500. The wood was set on fire by defendant's locomotive, and about $1,000 worth of it destroyed. Rogers claimed the insurance. The claim was compromised by the payment of $701.51 by the insurance company, which then sued the defendant in Roger's name, on the ground that the loss was caused by the defendant's negligence and defective machinery. Afterwards, Rogers on his part denied bringing the suit, or authorizing the use of his name in bringing it, and formally declined to be a party thereto. He also executed a release to the railway company of all claims and demands against it, on account of the loss. This release, the defendant set up in a plea and presented as a defence to the action, which it asked should be dismissed; but the court rejected the plea and refused to dismiss the action. Verdict in favor of the insurance company for $701.51, the amount it had paid Rogers. Judgment accordingly. Writ of error and *supersedeas* awarded. The opinion of the court states the other facts and the instructions given.

*D. S. Hounshell*, for appellant.

1. The court below erred in allowing the insurance company to prosecute this action in the name of Rogers against his formal protest, and in rejecting the defendant's plea setting out Roger's release of the defendant. The doctrine of the subrogation of the insurer to the right of action of the assured against the wrongdoer, does not apply where the insurer has paid the assured less than the amount due on the policy.

2. The court also erred in admitting testimony tending to prove other special fires extending backward three years

before the damage sustained by the plaintiff. Redfield on Railways, ch. 19, §§ 164–5, 6, and note 7, and other authorities.

3. The court also erred in refusing new trial on the ground that the verdict was contrary to the law and the evidence.

*B. H. Nash,* for appellee.

This case is of first impression here. The right of the insurer to recover of the wrongdoer the amount he had to pay the assured, and to bring an action in his name for that purpose, is established by the decisions of the supreme court of the United States and of the sister States. See *Hart* v. *Western R.,* 13 Metcalf, 99; *Conn. Ins. Co.* v. *Erie R. R. Co.,* 73 N. Y. 399; *Monmouth Ins. Co.* v. *Hutcheson and Camden and Amboy R. R.,* 21 N. J. (6 Green), 107; *Long & Hall* v. *Railroad Companies,* 13 Wallace, 367.

2. Evidence of other fires caused by the same locomotive was admissible, In 1 Otto, 454, the S. C. U. S. held that such evidence was admissible as tending to show negligent habits of the agents of the corporation.

3. The six instructions given at the plaintiff's instance, are correct. Their correctness is shown by the authorities cited above and below.

*Lack. and West. R. R.* v. *Solmon,* 10 Vroom N. J. 299; *Smith* v. *London and West. R. Co.,* Ex. Cham. L. Reports, 6, C. P. 14; *Vaughan* v. *Taff. Valley R.,* 5 H. & N. 679, 16 Kansas, 201; 40th Cal. 14; 49 N. Y. 420; 80 Penn. St. R. 373; and opinion of C. J. Dixon in *Kellogg* v. *Chic. and N. W. R.,* 26 Wis. 223.

Staples, J., delivered the opinion of the court.

The first question to be considered here is, whether an insurance company which has paid the assured the amount due him upon the policy, can maintain an action for re-

imbursement in the name of the assured against the per-
son by whose misconduct or negligence the loss was occa-
sioned.

The learned counsel for the defendants, in a very elabo-
rate note of argument, insists that the action cannot be
supported, because there is no privity between the insurer
of the property and the wrongdoer, and a right of action
sounding *in tort* is not assignable at common law, and cannot
be the subject of the equitable doctrine of subrogation.
We are of opinion, however, that the question cannot be
regarded as an open one, that the right to maintain such
action has been settled by a long train of decisions of the
highest courts of England and America. As far back as
the case of *Mason* v. *Sainsbury et als.*, reported in 3 Douglas, 61,
the doctrine was recognized by Lord Mansfield, and has
been again and again reaffirmed by the English judges.
In the United States the decisions are almost uniformly
the same way, as may be seen by reference to the
case of *Hart et als.* v. *Western R. R. Company*, 13 Metc. 103,
where the whole subject is exhaustively discussed by Chief-
Justice Shaw, and the grounds upon which the doctrine
rests fully and clearly stated. See also Woods on Fire In-
surance, 473-4, 477, and notes, where numerous decisions
are cited; *Hall & Long* v. *The R. R. Companies*, 13 Wallace, 367;
73 New York, 399.

The doctrine briefly stated is, where the property insured
is destroyed by the negligence of a third person, so that
the assured has a remedy against him therefor, the insurer,
by the payment of the loss, becomes subrogated to the
rights of the assured to the extent of the sum paid under
the policy, and may bring an action in the name of the
assured to recover the amount so paid. In such cases the
assured stands in the relation of trustee to the insurer to
the extent of the sum paid, and he cannot even release the
right of action, nor the action itself, if one has been com-

menced, so as to defeat the claim of the insurer to reimbursement from the wrongdoer for the injury. Woods, § 478. The learned counsel for the appellant has, however, taken the ground that this doctrine does not apply where the insurer has paid the assured less than the amount due upon the policy. In such cases the insurer has no right of subrogation or right of action for indemnity against the wrongdoer. In other words, if the insurer pays the assured the entire amount of the loss, he is entitled to his action against the wrongdoer for indemnity; but if by any arrangement or compromise with the assured, he pays less than the amount of the loss, he has no claim against the wrongdoer for reimbursement. The learned counsel has entirely misconceived the cases to which he has referred. These cases relate exclusively to controversies between creditors on the one hand and sureties on the other. They proceed upon the familiar doctrine that where the surety has satisfied the demand of the creditor, so that the latter has no longer any claim, the surety is entitled to the benefit of all the securities of the creditor, and all his rights and remedies against the principal. But where the surety has paid part only of the debt or demand, his right of subrogation is in subordination to the paramount claim of the creditor to be satisfied his whole demand, the surety will be permitted to occupy the place of the creditor only when the latter has no longer occasion to hold the securities for his own protection. This is the principle laid down in *Grubbs* v. *Wysors*, 32 Gratt. 131, and is the doctrine of the cases cited by appellant's counsel. It will be observed they have no sort of application to a case like the present, where the creditor (the insurer) has been fully satisfied and is asserting no demand against the wrongdoer.

No good, or even plausible reason can be suggested for the distinction made by counsel, and no authority can be found to support it. If the assured prefers to accept from

the insurer a less sum than he is justly entitled to for the loss sustained, rather than embark in an expensive law suit for the recovery of the whole, the wrongdoer certainly has no just cause of complaint. It does not lie in his mouth to say that the damage arising from his misconduct deserves a higher compensation, and he ought to be compelled to pay more than he is required to pay. The insurer's equitable right of subrogation is based upon what he has actually paid, and not upon that which he might or ought to have paid; and as against the wrongdoer, he is entitled to indemnity for the part so paid, whether it be the whole or part of the demand. I do not deem it necessary to notice particularly some other cases cited by appellant's counsel. They relate to the law of maritime insurance, and the rights of insurers as affected by what is known as an abandonment of the property insured. They have no sort of application to the present controversy. Applying these principles to the present case, they are conclusive of two matters. First, the right of the Watertown Fire Insurance Company to maintain this action in the name of the nominal plaintiff, Rogers, who has been indemnified for his loss. Secondly, that the release obtained from Rogers by the defendant, after the commencement of the action, is null and void and in violation of the rights of the insurance company. The circuit court, therefore, did not err in disregarding the release and the plea which offered it as matter of defence.

The next error assigned is the admission of testimony on the part of plaintiff tending to show that the defendant's locomotive on occasions, other than that for which the action is brought, had emitted sparks and communicated fire to the property along its track and right of way. We are of opinion that this evidence was relevant and proper for the purpose of showing negligence on the part of the defendant's employees, or it may be defects in the construction of the engine in question.

In the case of *Grand Trunk R. R.* v. *Richardson,* 1 Otto, 454, the supreme court of the United States was of opinion that evidence was properly received to show that fire had been communicated by sparks at other times and from other locomotives of the same company, in order to show a negligent habit of its officers and agents. In the case before us, the testimony is limited to one and the same locomotive, and is clearly admissible according to all the authorities.    Pierce on Railroads, 438 ; Sherman & Redfield on Negligence, 380.

The next error assigned is, the action of the circuit court in giving instructions asked for by plaintiff's counsel. It will only be necessary to state, in substance, the several propositions of law embodied in four of these instructions. First, they assert that the defendants are liable for the loss sustained if the cord-wood of the plaintiff was burned by sparks or fire emitted from the defendant's locomotive, through carelessness on the part of the defendant's employees or agents, or for want of proper machinery or spark arresters, and the liability equally attaches if the fire in question originated on the defendant's right of way, and was thence communicated to and burned the wood belonging to the plaintiff.    Second, the defendants are liable for the loss, if they did not have the most approved and best appliances and safe-guards in the nature of ash-pans and spark-arresters—such as are generally adopted by and used upon modern railroads in this country.    Third, the defendants are liable, if they permitted combustible matter to accumulate and remain on their track or right of way, so that fire from the locomotive in passing such combustible matter, might be communicated to adjoining property, and was, in fact, so communicated by sparks issuing from such locomotive and thrown upon and igniting such combustible matter.

These are the propositions laid down in the first four instructions of the plaintiff. That the railroad company is liable, where the fire is attributable to the negligence of its agents, or to the want of proper machinery and spark-arresters upon its locomotives, does not admit of controversy.

In employing so powerful and dangerous an agency as steam, it is incumbent upon the company to avail itself of the best mechanical contrivances and inventions in known practical use, which are effectual in preventing the burning of private property by the escape of sparks and coals from its engines, and it is liable for injuries caused by its omissions to use them. Pierce on Railroads, pp. 433–43; Wharton on Negligence, § 872.

With respect to the accumulations of combustible matter near the track of the road, there is some diversity of judicial opinion. In some of the cases it is held that the leaving such matter exposed to the sparks issuing from locomotives, is *per se* negligence which renders the company liable in case of loss. In others, it has been held to be a matter for the jury to determine, under all the circumstances, whether such conduct is actionable negligence. We are of opinion that like all other questions of care and diligence, it is a matter for the jury to determine, and no inflexible rule can be laid down on the subject. What may be reasonable care in one case, might be gross negligence in another. Still, it may be safely said for a railroad company negligently to permit the accumulation of combustible matter along its line in such a situation as readily to ignite from sparks from its locomotives, is such conduct as will make it responsible for damages sustained by fires communicated from such matter to adjacent property. Wharton on Negligence, § 98, 873; Pierce on Railroads, 434, 58 Illi. 390.

This disposes of the first four instructions of the plaintiff. The fifth instruction is in the following words:

" The court instructs the jury that railroad companies, having conferred on them by law the privilege of using and employing the powerful and dangerous agency of steam, have also imposed on them the exercise of the greatest caution and prudence in their business, and any omission on the part of the railroad to exercise that high degree of caution and prudence toward the public and adjoining property-holders, is negligence on the part of such railroad, and they will be held responsible for the consequences of such want of care and prudence."

The difficulty with respect to this instruction is, that it announces a rule which imposes upon railway companies the same degree of care and diligence in the conduct of their business towards the holders of adjoining property that is exacted from them as carriers of passengers. The law requires of such companies that they shall adopt such precautions as may reasonably prevent damage to such property, and it may be that in towns and cities and populous districts, they should be held to the exercise of the highest degree of care and diligence to prevent injury to others. But we are not prepared to say that any omission to exercise the highest degree of care and diligence under all circumstances constitutes negligence on the part of a railroad company. If it be conceded, however, that the language of the instruction is too broad and comprehensive, as to which no opinion need be expressed, it does not follow the judgment is on that ground to be reversed. For, although an instruction may be erroneous, this court will not for that reason grant a new trial, if it be manifest that the excepting party could not have been prejudiced by it. This is the settled rule of this court, recognized and acted on in numerous cases. What was said by Judge Daniel in *Colvin* v. *Menefee*, 11 Gratt. 93, directly applies here.

The facts which the excepting party sets out for the pur-

pose of exhibiting the supposed error of the court, show at the same time that the fate of his case, as resting on that foundation, must have been the same though the instructions have not been given. For if it be conceded, as claimed by the defendant, that their locomotive was of the most approved construction, and their spark-arrester was the same as used by the leading railroads of the country, the fact was nevertheless established that this same engine had on several occasions set fire not only to buildings, but to fields and forest and combustible matter on and along their line of the road. The testimony of a dozen witnesses could not lessen the force of this evidence. With such an engine in use, it was the grossest negligence in the defendants to permit the accumulation of a large quantity of highly combustible matter along their track, especially at a point where there was a heavy grade, and a consequent increase in the volume of sparks emitted. The defendants were, therefore, liable upon the ground of gross negligence, a want of ordinary care in the conduct of their business. And upon this ground the jury must have found a verdict for the plaintiff, even though the instruction had never been given.

It is clear, therefore, that the defendants could not have been in the least prejudiced by the ruling of the court in this particular. It may be further observed that the defendants also asked for instructions, all of which were given by the court. These instructions, in connection with those of the plaintiff, had so clearly stated the principles of law applicable to the real facts of the case, it may be fairly presumed that the jury fully comprehended the entire scope and extent of these inquiries and the duty they were to perform.

All that has been said with reference to the fifth instruction, applies with equal force to the sixth, asked for by the plaintiff. It is in the following words:

"If the jury believe from the evidence that the defendants used wood in their locomotive, known as the 'Henry Young,' when their necessity and convenience required, and they further believe that said locomotive was built for the exclusive use of coal as a generator of steam, then the defendants were guilty of negligence and the jury will find for the plaintiff."

This language, literally construed, required the jury to find for the plaintiff if the defendants used wood as fuel in their engine whenever necessity and convenience required, although it might not have been so used at the time of the occurrence of the fire. The draftsman of the instruction meant no doubt to declare that if at the time of the happening of the accident wood was used for the purpose of generating steam, such use of it in an engine constructed exclusively for burning coal, constituted negligence, for which the defendants were liable. We think that this is the construction which ought to be given to it here. The plaintiff proved that the screen or spark-arrester in the engine was constructed with reference to burning coal exclusively, and that on several occasions during the month of April the persons in charge of the locomotive had procured wood for use in the engine, and they insisted it might be fairly inferred from all the evidence it was so used at the time of the occurrence of the fire in question. On the other hand, the defendants proved at that time coal only was used for the purpose of generating steam. It was a question for the jury to decide which of these theories was correct. It was with reference to this state of the facts the instruction was asked for and given. It was no doubt so understood by the court and the counsel on both sides. It would be an insult to the understanding of the jury to suppose they did not perceive that the point they were to decide was whether wood was in fact used at the time of the happening of the accident. If they believe

it was not, there was of course an end to all controversy on that branch of the case. These considerations are sufficient to show that the jury could not have been misled by the language in which the instruction was couched. We do not mean to affirm that the use of wood in a coal-burning engine is *per se* negligence. It is a circumstance from which negligence may often be inferred, because, as was proved in this case, the meshes in the wire netting of a spark-arrester are made much larger when coal only is used for fuel than when made for wood, and sparks from wood are more dangerous than those from coal, because they retain fire for a much greater length of time. The consumption of wood as fuel in this particular locomotive, under the circumstances disclosed by this record, was negligence, and gross negligence, particularly on the day and at the place of the fire, when, as is proved, the wind was high and blustering, and where there was an accumulation of a large quantity of combustible matter liable at any time to be ignited.

Upon the whole, we are of opinion there is no error in the ruling of the court to the prejudice of the defendants; that a case of grosser negligence could scarce be shown than is exhibited by this record, and that the judgment of the court must accordingly be affirmed.

At the same time, we cannot refrain from saying that the practice, now so prevalent, of multiplying instructions, many of them involving doubtful questions of law, not only places the appellate court in a position of great difficulty with respect to verdicts that are just and proper, but frequently leads to a reversal where otherwise there would be an affirmance. We respectfully suggest that one or two instructions would often be more intelligible to the jury and more effectively attain the ends of justice.

JUDGMENT AFFIRMED.