[S. F. No. 4696. In Bank.—July 1, 1909.]

SIMPSON FINNELL, Respondent, v. JAS. H. GOODMAN
· & CO. BANK, Appellant.

SUBROGATION—PROPERTY TAKEN BY BANK IN PAYMENT OF DEBT—INDIVIDUAL LOANS OF PRESIDENT—REPAYMENT BY PRESIDENT TO BANK.
—Where a bank takes from its debtor a transfer of property, including stock in another corporation, in satisfaction for the entire indebtedness due it, a part of which had its origin in loans made by its president as an individual which he had improperly repaid to himself out of its funds, and thereafter compels the president to pay it so much of the indebtedness as was so improperly incurred, the latter is not entitled to be subrogated to a proportionate part of the stock taken by the bank.

Id.—SUBROGATION CONDITIONED ON PAYMENT OF ENTIRE INDEBTEDNESS.
—Assuming that the president, upon repayment of so much of the
indebtedness to the bank, acquired a claim against the primary
debtor, and that equity, for his benefit, would consider the matter
still at large, the entire debt still existing, and the bank as the
holder of the entire property in pledge for the payment of the entire
debt, he would be required to make payment to the bank of the
entire debt as a condition precedent to a right of subrogation to the
title of the bank to any part of the property, or to a right to hold
the bank as trustee thereof.

Id.—SECURITY FOR SEVERAL CLAIMS—SUBROGATION BY DEBTOR OF SINGLE
CLAIM.—Where property is mortgaged or pledged by a single trans-
action, as security for several claims to a single creditor, another
person, who is bound to the creditor for one only of the claims
secured, is not entitled to subrogation until he has paid, not only
the claim for which he is bound, but also all the claims for which the
property is held.

Id.—INSUFFICIENCY OF SECURITY TO SATISFY ENTIRE INDEBTEDNESS.—
It would be inequitable, in any view of the case, to compel the bank
to yield to the president a part of the property taken for the debt,
unless the remainder of such property is sufficient to secure or sat-
isfy the part of the debt which the president did not repay.

APPEAL from a judgment of the Superior Court of Napa
County and from an order refusing a new trial.   Henry C.
Gesford, Judge.

The facts are stated in the opinion of the court.

Garret W. McEnerney, and Walter Rothchild, for Appel-
lant.

Charles W. Slack, Charles S. Wheeler, Bush Finnell,
Charles E. Trower, and J. J. Dunne, for Respondent.

SHAW, J.—The defendant, a banking corporation, appeals
from the judgment and from an order denying its motion
for a new trial.

The object of the action, as shown by the complaint, is to
have the plaintiff adjudged to be the owner of 3241 shares
of the capital stock of the Finnell Land Company, standing
in the name of the defendant, and to compel the defendant to
transfer and deliver the said shares to plaintiff.   The court
below gave judgment directing the defendant to deliver to
the plaintiff 2717 of the said shares.   The transactions out of

which the claim of the plaintiff arises occurred between the defendant and George E. Goodman. The plaintiff has succeeded to the rights of George E. Goodman by assignment. In our consideration of the case we will refer only to the actions and rights of Goodman. The facts upon which the judgment was based are stated in the findings and will now, in substance, be stated.

The defendant was incorporated as a banking corporation on June 11, 1889, and ever since July 1, 1889, has been engaged in the banking business. We shall hereafter designate it as the bank. Goodman was its president during all the period involved except from March 22, 1895, to July 9, 1896. During that period, however, no important transactions occurred. The Finnell Land Company was incorporated on May 24, 1900, with a capital stock declared in its articles to be of the value of six hundred and fifty thousand dollars, divided into six thousand five hundred shares of the par value of one hundred dollars each, all of which were owned by John Finnell.

On October 26, 1900, John Finnell was indebted to the bank in the sum of $447,742.80, of which $275,559.87 was evidenced by notes secured by deeds of trust covering 12,221.87 acres of land belonging to the Finnell Land Company, and $172,182.93 was due for overdrafts on open account and unsecured.

Of this sum of $447,742.80 due from Finnell to the bank, $267,372 was on account of money of the bank which had been loaned to Finnell by George E. Goodman, to be used to pay debts from Finnell to Goodman. This money was loaned by Goodman for that purpose at divers times while he was president of the bank and was so used and applied.

On that day, October 26, 1900, Goodman being then president of the bank, Finnell made a settlement of his aforesaid debt to the bank. This settlement was made with the knowledge and consent of Goodman. The evidence shows further that he negotiated the settlement, but this is not stated in the findings. By this settlement Finnell sold and transferred to the bank forty-five hundred shares of the capital stock of the Finnell Land Company and certain wheat, barley, and wool, in consideration whereof the bank discharged Finnell's said debt. The wheat, barley, and wool taken by the bank

were of the value of $21,477.80 and that sum was credited by the bank on its account against Finnell, which account included the secured notes aforesaid as well as the overdrafts.

The findings show that at the same time Finnell transferred to Goodman the remaining two thousand shares of stock in the Finnell Land Company in consideration of the discharge by Goodman of a debt of some $352,238.27 and accrued interest due from Finnell to said Goodman. We do not think these facts are material to the case, except, perhaps, as matters of evidence.

On August 21, 1903, the bank demanded of Goodman the sum of $323,970, on account of the said $267,377 of the bank's funds previously loaned as aforesaid by Goodman, as president, to Finnell and used to pay his debts to Goodman. This demand included seven per cent interest from October 26, 1900, to August 21, 1903, on the sum so used by Goodman. After some negotiation with Goodman the interest was reduced to five per cent and Goodman thereupon paid the bank three hundred and seven thousand dollars in satisfaction of the demand.

On account of this payment the court below held that Goodman was entitled to a proportional part of the forty-five hundred shares of the Finnell Land Company stock which the bank had received from Finnell in satisfaction of the debt of which the $267,372 was a part. It also found that the bank had expended ten thousand dollars in obtaining necessary advice and services of an attorney in enforcing its demand against Goodman for said sum, and that, on that account, in estimating the proportion of the stock due to Goodman, the sum of $257,372 only, should be taken as the numerator. The $21,477.80 credited on account of the wheat, barley, and wool was taken from the total debt, leaving a balance of $426,265, for which balance the bank, as the court concluded, had received the forty-five hundred shares of stock. The theory was that each share of stock represented a due proportion of the debt and that when Goodman was forced to repay to the bank $267,372 of the same debt, he became equitably entitled to receive from the bank a number of shares of the stock bearing the same proportion to the forty-five hundred shares as the sum of $257,372 (being the sum he paid, less the ten thousand dollars, and without in-

terest) bears to $426,265. This proportion would amount to 2717 shares, for which judgment was given.

The original complaint alleged that when Goodman paid the $267,372 and interest in August, 1903, in liquidation of the demand then made upon him, it was agreed between him and the bank, that the bank in consideration thereof, would transfer to him a proportionate part of the forty-five hundred shares of the stock. In the amended complaint it was alleged that the bank agreed to transfer to him, in consideration of said payment, 3241 shares of said stock. The court found that no such agreement was made and that no agreement to transfer any shares to Goodman was made in connection with that transaction.

The complaint alleges that the shares of stock of said company have no market value. The answer alleged that on October 26, 1900, when it was taken by the bank in discharge of Finnell's debt, each share of the stock "was of the value of $30," and that it has greatly depreciated in value since that date. The court found that the stock has no market value. It also found as follows: "It is not true that on the 26th day of October, 1900, each share of the said Finnell Land Company stock was of the value of *but* $30." The complaint contained no allegation as to its actual, or intrinsic value, as distinguished from its market value.

The suit of the plaintiff was manifestly founded upon the alleged agreement that upon payment by Goodman to the bank the bank would transfer to him a proportionate part of the stock. The court, as stated, found that this allegation was wholly untrue. The plaintiff is therefore forced to rely on other propositions in order to sustain the judgment. We know of no principle of law or equity by which the plaintiff can claim a right to a proportion of the stock, upon the facts found.

The claim of the plaintiff is that when the funds of the bank were improperly loaned by Goodman to Finnell, it then had two remedies whereby to obtain reimbursement of the $267,372 thus loaned, one to pursue Finnell, the debtor, the other to compel payment from Goodman, its unfaithful president; that it elected to pursue Finnell and accepted property from him in satisfaction of the entire debt of $447,772.80, including the $267,372 for which Goodman also was liable;

that after having thus obtained satisfaction from Finnell, the bank could not demand payment from Goodman of a part of the debt, and at the same time hold the property received from Finnell for its own use, but that it thereupon and thenceforward held as trustee for Goodman that part of the stock received from Finnell which was the equivalent of the $267,372 refunded to it by Goodman. This claim is necessarily founded upon the proposition that, in the settlement with Finnell, each share of the stock was taken separately, as satisfaction for its proportion of the debt, or that it must be so considered in equity, so that when Goodman refunded any of the money, he at once became entitled to its equivalent in stock at this ratio. This proposition finds no support either in the findings or in the evidence and we know of no rule or principle in equity which declares it as a matter of law. It omits all consideration of the right of the bank to a full payment of its whole debt in preference to the claim of Goodman. The shares of stock were not taken separately at a fixed price per share. The stock, as a whole, was not even taken as satisfaction of a stated part of the debt. What actually occurred, according to the findings, was that Finnell transferred to the bank the wheat, barley, wool, and stock, as an entirety, in consideration of the satisfaction and extinguishment of his debt to the bank and the discharge thereof by the bank. There was no separation or segregation of the items, and the whole of the property was taken for the entire debt. The evidence shows further that when the wheat, barley, and wool were sold, after they were transferred to the bank, the selling price, $21,477.80, was credited on its books to the Finnell account, that the property was not accepted because it was considered full payment, or as sufficient to satisfy the debt, but because it was all that could be obtained from Finnell and that it was not considered as satisfaction, but that in fact the bank's account against Finnell was balanced by crediting two hundred and seventy-six thousand dollars for the stock, $21,477.80 for the other property, and writing off the balance of $150,265 as a charge to "Reserve" and "Profit and Loss." There is nothing to the contrary of this in the findings. Neither is there anything to indicate that at that time the right of the bank to look to Goodman for reimbursement for any part of the debt was considered or even thought

of. The entire theory of the right of Goodman to a proportion of the stock therefore falls to the ground for lack of the essential facts upon which it must be founded.

The claim of the plaintiff is untenable upon other grounds. The wrongful acts of Goodman had added $267,372 to the claim of the bank against Finnell, who was unable to pay. It may be conceded for argument's sake, that if Goodman repaid this money to the bank he would have a claim against Finnell therefor, Finnell being the primary debtor. But, in that case, it must also be conceded that in making application of the property received from Finnell in satisfaction of the entire debt, the claim of the bank to have actual satisfaction for the legitimate part of its debt against Finnell,—the part not improperly created by Goodman,—would have priority and preference to any claim of Goodman to subrogation, or to a lien in his favor upon the property for the sum he refunded on account of the improper loans. He could not equitably claim equality with the bank in resorting to this property for the reimbursement of the moneys returned by him to the bank which had been wrongfully taken by him in the first place. As between the bank and Finnell, the transaction had been closed and the debt settled. But Goodman can claim a right of subrogation, or a right to hold the bank as trustee with regard to the property, if he can claim it at all, only upon the theory that for his benefit equity will consider the matter still at large, the entire debt still existing, and the bank as the holder of the entire property in pledge for the payment of the entire debt. Such being the case, the well-known principles of equity, as well as the relations of the parties and the tortious origin of Goodman's claim, require him to make full payment of the entire debt as a condition precedent to his right of subrogation to the title of the bank to any part of the property, or his right to hold the bank as trustee thereof, conceding for argument's sake that he could in any case have such right. Where property is mortgaged or pledged by a single transaction, as security for several claims to a single creditor, another person who is bound to the creditor for one, only, of the claims secured, is not entitled to subrogation until he has paid, not only the claim for which he is bound, but also all the claims for which the property is held. (1 Brandt Suretyship, secs. 338-354; 6

Pomeroy's Equity Jurisprudence, sec. 922, note 95, sec. 923, note 102; 27 Am. & Eng. Ency. of Law, p. 211; *Crump* v. *McMurtray*, 8 Mo. 414; *Grubbs* v. *Wysors*, 32 Gratt. 130.)

Furthermore it would be inequitable in any case to compel the bank to yield the plaintiff a part of the property taken for its debt, unless the remainder of such property is sufficient to secure or satisfy the part of the debt which Goodman did not repay. This part, excluding the payment upon the sale of the wheat, barley, and wool, amounted to $158,893 on October 26, 1900. As the findings show that the Finnell Land Company had no revenue it is obvious that it could not have paid any dividends. Allowing interest thereon, this part of the debt in August, 1903, when Goodman repaid the sum for which he was liable, amounted to over one hundred and ninety thousand dollars. It was incumbent upon the plaintiff, upon his own theory of the case, and by obvious principles of equity, to aver and prove that the stock was of a value more than sufficient to pay this balance. He did not allege that it had any value and the findings show only that its value exceeded one hundred and thirty-five thousand dollars. The evidence indicates that it was worth even less. The stock left to the plaintiff by the judgment would be worth only $53,491.

We are of the opinion therefore that the findings do not support the judgment and for this reason the judgment must be reversed. A large number of rulings in the exclusion and admission of evidence are assigned as error. The conclusions we have reached will, as we believe, be sufficient to indicate the evidence that will be proper upon another trial, and render it unnecessary to consider these points at length. It may be remarked that the insolvency of Finnell, the failure of Goodman to take security for the money of the bank loaned him, or part thereof, the agreement, if any, when the bank was organized and succeeded to the assets of the previously existing partnership, that the bank was to be fully paid before Goodman would enforce his own debts against Finnell, and the actual value of the stock at the time it was taken and subsequently up to the time of trial would be pertinent matters of evidence upon any trial of the real controversy between the parties.

The judgment and order are reversed.

Angellotti, J., Sloss, J., Henshaw, J., and Melvin, J., concurred.

On July 30, 1909, the court in Bank rendered the following opinion:—

THE COURT.—The appellant has filed a petition asking that the judgment reversing the case unconditionally be vacated, and that, instead thereof, the cause be remanded with directions to the court below to enter judgment that the plaintiff should be entitled to receive the whole of the Finnell Land Company stock, upon payment of the balance due upon the debt for the satisfaction of which it was taken by the bank, treating that balance as a still subsisting obligation. In the opinion rendered we held in effect that this was the only relief which the plaintiff could equitably demand. The defendant now consents that this relief be directed. The bill of exceptions expressly declares that it exhibits the substance of all the evidence given and offered upon the trial. The trial was careful and thorough. The evidence in proof of the alleged agreement that upon the payment by Goodman of the money demanded of him by the bank, it would transfer to him a proportionate part of the stock it had received from Finnell was vague, unsatisfactory, and clearly insufficient to prove such agreement, and it appears therefrom that the plaintiff produced all the evidence upon the subject which it could ever hope to obtain. There is no occasion for a new trial if the defendant is content with a judgment as above indicated. The judgment on unconditional reversal would require a new trial. That judgment is vacated and upon the consent of the defendant aforesaid the following is given as the judgment of this court:—

The judgment and order are reversed and the cause is remanded to the superior court with directions to enter judgment that if the plaintiff shall, within six months from the date hereof, pay to the defendant the sum of $158,893, with legal interest from October 26, 1900, after crediting all profits received on the stock after that date, the plaintiff shall thereupon receive from the defendant the forty-five hundred shares of stock of the Finnell Land Company which said defendant received from John Finnell; and that if such payment is not

made within said period, then that the plaintiff take nothing by his action.

The defendant will recover the costs of appeal.