The Lake Erie and Western Railroad Company

*v.*

Jonathan P. Middlecoff *et al.*

*Filed at Springfield April 2, 1894.*

1. Negligence—*escape of fire from locomotive—ordinance as to speed of train.* In an action against a railway company for an injury caused in a city by the escape of fire from the locomotive, an ordinance limiting the speed of passenger trains within the city to ten miles an hour is properly admissible for the plaintiff, when one count sets out such ordinance, and that by reason of such excessive rate of speed the sparks were thrown from the engine which set fire to the plaintiff's property, especially when there is evidence tending to show that a high rate of speed is more likely to result in the emission of sparks or coals from the engine.

2. Same—*evidence showing defendant's right to a side-track in street.* If a railway company obtains the right to lay a side-track upon a street by condemnation or by grant from the owner, on the question of the liability of the railway company for the escape of fire from its engine it will be competent for the plaintiff to prove, as a collateral fact, the nature and extent of the defendant's right, or the burdens imposed upon its exercise, without pleading the condemnation or the private grant. And so the plaintiff may introduce the ordinance showing the rights and liabilities of the company.

3. Same—*when no injury results.* In an action against a railway company for an injury caused by the escape of fire from an engine while passing through a street on a side-track, the court admitted in evidence the ordinance giving the right of way in the street, which ordinance required the company to make and keep in repair a good and sufficient wagon road on each side of its track : *Held,* that as it was not claimed the injury resulted from the failure to keep in repair a wagon road, the admission of the ordinance, if an error, was harmless.

4. Same—*liability growing out of joint negligence.* Where an injury is the result of the joint operation of the negligence of several parties, either party thus negligent may be made answerable for the entire injury. All who contribute to a tort are liable to the person injured, each for the entire damage, and it can not be apportioned.

5. Same—*escape of fire from engine passing through a city.* If the negligence of a city in allowing grass and weeds to accumulate in a street upon which a railway line is located, is not of such a character as to render it liable for the destruction of adjacent property by fire

from the railway engines, this will in no degree lessen the liability of the railway company for communicating fire to the grass and weeds, from which it spreads and destroys property.

6. SAME—*proof of unsafe condition of engine.* In an action against a railway company to recover for injury by the escape of fire from an engine, the defendant introduced evidence tending to show that the engine was in good repair and was furnished with a suitable spark arrester ; that it had been recently examined and found in good order, and that it was under the control of a competent engineer, and was being carefully operated :  *Held*, on rebuttal it was admissible for the plaintiff to show that on the same day the plaintiff's property was burned, several other fires were set from sparks emitted by the same engine, within a few miles of where the first fire was set.

7. SAME—*contributory negligence of plaintiff—failure to keep land free from combustible materials.* In such an action the court instructed, in behalf of the plaintiffs, that it was not negligence on the part of the plaintiffs, as owners of the property in question, that they had used their land or property in the same manner, or permitted it to be and remain in the same condition, in which it would have been used or would have remained had no railroad passed near it :  *Held*, that there is no material objection to the instruction.

8. VARIANCE—*as to situation of property burned.* In an action against a railway company to recover for the loss of buildings by fire, one count described the buildings as situate on a certain block, while the proof showed that the building extended some four feet over into the street : *Held*, that such variance did not apply to the other counts, and a recovery might be sustained under them.

9. SAME—*obviated by stipulation.* Where, at the beginning of the trial, it is admitted by both parties that the property injured fronts on a certain street and is situated on a certain block of a city, the parties can not be allowed to insist that the property is situated otherwise than as thus admitted, and thus defeat a recovery for an injury thereto.

10. RAILROADS—*right of way to be kept clear of dry grass, etc.* So much of a public street as is used and occupied by a railway company constitutes a part of its right of way, within the meaning of the statute requiring such companies to keep the right of way free from dead grass, dry weeds and other dangerous, combustible material.

11. The right of way of a railway company over and upon the streets in a city includes all that part of the street held and in actual use by such railway company for its main track, side-track, switches and turn-outs that are in anywise connected with its main track, and used by the railway company for loading and unloading cars or for storing cars. The company is required to keep such right of way clear from dead grass, etc.

APPEAL from the Appellate Court for the Third District;— heard in that court on appeal from the Circuit Court of Ford county; the Hon. ALFRED SAMPLE, Judge, presiding.

Messrs. CLOUD & KERR, Mr. A. E. DEMANGE, and Mr. W. E. HACKEDORN, for the appellant:

· Appellees' declaration charges that the property destroyed was in block 46, or on their own premises. The proof shows that a portion of it was not. The variance is fatal. *Railroad Co.* v. *Morgan*, 72 Ill. 155; *Wright* v. *Railway Co.* 27 Ill. App. 200, and cases cited; *Railroad Co.* v. *Ward*, 135 Ill. 511; *Railway Co.* v. *Friedman*, 146 id. 583; *Railroad Co.* v. *Winslow*, 66 id. 219; *Insurance Co.* v. *Rubin*, 79 id. 402; *Hackett* v. *Smelsley*, 77 id. 109; *Machine Co.* v. *Rosine*, 87 id. 105.

The two ordinances admitted in evidence were incompetent and immaterial. *Railway Co.* v. *Klauber*, 9 Ill. App. 613; *Palmer* v. *Marshall*, 60 Ill. 289; *Railroad Co.* v. *Godfrey*, 71 id. 500.

The city had exclusive dominion over Holmes street. Upon it rested the burden of keeping it in proper condition, which burden was not transferred to the railroad company. It was not appellant's right of way, within the meaning of that section of the statute which requires railroad companies to keep their rights of way free from dead grass, weeds, etc. Appellant had nothing but a mere right of passage over the street. *Railroad Co.* v. *Quincy*, 92 Ill. 21; *People* v. *City*, 65 N. Y. 349.

It is the duty of every property owner to exercise ordinary care for the preservation of his property, commensurate with the dangers which surround it. If he fails to exercise such care, and in consequence suffers loss, he is without remedy. *Railway Co.* v. *Taukersly*, 63 Texas, 57; *Fitch* v. *Railroad Co.* 65 Mo. 327; *Small* v. *Railroad Co.* 50 Iowa, 338; *Railway Co.* v. *Clayburg*, 107 Ill. 644; *Railroad Co.* v. *Moran*, 30 Ill. App. 635; *Lester* v. *Railroad Co.* 60 Mo. 265.

Mr. Thomas Bates, Messrs. Cook & Moffett, and Mr. J. H. Moffett, for the appellees:

The question of title can not be raised by appellant. *Shoup* v. *Shields,* 116 Ill. 488; *McLean* v. *Farden,* 61 id. 106; *Railroad Co.* v. *Cobb,* 94 id. 55; *Railroad Co.* v. *Lewis,* 51 Fed. Rep. 658.

In the last cited case the court say (p. 663): "In such a case possession is *prima facie* evidence of right, and no stranger may disturb that possession without showing some authority of right from the true owner. This applies to the negligent destruction of the property, as well as to its wrongful taking or asportation."

The ordinance granting the right of way on Holmes street, even if incompetent, could not have injured appellant, and in such case the error is harmless. *Railway Co.* v. *Greiney,* 137 Ill. 628.

All the land held and in actual use by a railroad company for its side-tracks, switches and turn-outs, must be regarded as a part of the right of way of the company. *Railroad Co.* v. *People,* 98 Ill. 350.

The law of this State makes it the imperative duty of appellant to keep its right of way free and clear of dry grass, dead weeds, or other dangerous, combustible matter, (Starr & Curtis' Stat, chap. 114, sec. 63,) and the failure to do so is negligence *per se.* It is the duty of the court to so instruct. *Railroad Co.* v. *Goyette,* 133 Ill. 21; *Railroad Co.* v. *Huggins,* 20 Ill. App. 639; *Railroad Co.* v. *Lewis,* 51 Fed. Rep. 658; *Railroad Co.* v. *Voelker,* 129 Ill. 540.

The statutes of the State of Illinois declare: "It shall not, in any case, be considered as negligence on the part of the owner or occupant of the property that he has used the same in the manner, or permitted the same to be used or remain in the condition, it would have been used or remained had no railroad passed through or near property so injured." Rev. Stat. chap. 114, sec. 104.

There can be no room, under this statute, for exemption from liability on the part of appellant, on the ground of contributory negligence of appellees. *Railroad Co. v. Voelker,* 129 Ill. 540.

It is not contributory negligence on the part of appellees to permit dry grass, etc., on their lands, which would spread fires negligently set by appellant.

The evidence of witnesses who testified to other fires set by the identical engine which is claimed to have set the fire in question, on the same day, is competent, and has been held so by our courts time and again, and we are surprised that counsel made the point that such evidence is not proper. *Railroad Co. v. Kirts,* 29 Ill. App. 175; *Railroad Co. v. Cruzen,* id. 212; *Railroad Co. v. Goyette,* 133 Ill. 21; *Railroad Co. v. Richardson,* 91 U. S. 454; *Railroad Co. v. Lewis,* 51 Fed. Rep. 658.

The fact that fire and sparks escape from a given engine, of itself raises a presumption of defect therein, and authorizes a finding of negligence against the railroad company. *Logan v. Railroad Co.* 43 Mo. App. 61; *Railroad Co. v. Smith,* 42 Ill. App. 527.

The fact fires were set by sparks from a locomotive at a distance that they would or could not be thrown when the spark arrester is in good order and repair, and the engine in good order and repair and properly handled, is so inconsistent with the evidence of railroad men as to the condition of the engine, spark arrester, competency of the engineer, etc., as to raise a question of fact for the jury. *Hagen v. Railroad Co.* 86 Mich. 615.

The fact that the appellant railroad company set fire to appellees' property, makes for appellees a *prima facie* case, and if set upon its right of way in dead grass, dry weeds, etc., and thereby communicated to the property of appellees, then appellant is absolutely liable. *Railway Co. v. Nicewander,* 21 Ill. App. 305; *Railroad Co. v. Goyette, supra; Railroad Co. v. Campbell,* 86 Ill. 444.

Even in case where the fire originated outside of appellant's right of way, before they can overcome a *prima facie* case made by appellees by showing that the fire which destroyed their property was set by appellant's engine, appellant is required to show affirmatively that its engine, at the time in question, was equipped with the most approved appliances to prevent the escape of fire, and that the same was in good repair, and was properly, carefully and skillfully handled by a competent engineer. *Railroad Co.* v. *Quaintance*, 58 Ill. 389; *Railroad Co.* v. *Campbell, supra; Railway Co.* v. *Nicewander, supra; Railroad Co.* v. *Pennell*, 110 Ill. 435.

Mr. Justice Bailey delivered the opinion of the Court:

This was an action on the case, brought by Jonathan Middlecoff and four others, copartners, etc., for their own use and for the use of certain insurance companies, against the Lake Erie and Western Railroad Company, to recover damages for the destruction by a fire caused by sparks emitted from one of the defendant's locomotive engines, of a certain canning factory and the appurtenances and machinery therein. At the trial the jury found the defendant guilty and assessed the plaintiffs' damages at $8900, and for that sum and costs the plaintiff had judgment. That judgment, on appeal to the Appellate Court, was affirmed, and this appeal is from the judgment of affirmance.

The facts being settled adversely to the defendant by the judgment of the Appellate Court, we must assume that the evidence warranted the jury in finding that the building and property in question were destroyed by a fire caused as alleged; that the sparks or coals from which the fire originated escaped from the engine through the defendant's negligence, either in the construction, equipment, repair or management of its engine, and that the plaintiffs were not guilty of any negligence contributing to the loss. The facts therefore need not be considered or stated, except so far as may be necessary to a

proper understanding of the rulings of the trial court in the admission and exclusion of evidence and in the instructions to the jury of which complaint is made. For the proper elucidation of the questions thus raised, the facts may be briefly stated as follows:

The canning factory in question was situated on the northerly side of Holmes street in the city of Paxton, and was built in the summer of 1888, by the Paxton Canning Company, a corporation, in which the plaintiffs were stockholders and the owners of a majority of the stock. Holmes street is one of the public streets of Paxton, running from the south-east to the north-west, and having a width of about eighty-five feet. The main track of the defendant's railroad runs along the center of the street, and shortly after the erection of the canning factory, a side track was built by the defendant at the instance of the canning company and for its accommodation, diverging from the main-track at a point a few hundred feet easterly of the canning factory, and running thence westerly near the northerly line of the street and terminating a few feet west of the factory. In the construction of this side-track, the canning company did the grading and furnished the ties, but does not seem to have made any claim of ownership of the side-track. At the point where the canning factory stood, the northerly rail of the side-track was eight and one-half feet from the southerly wall of the factory building, and the space between the side-track and main-track was twenty-three feet and four inches. No other tracks were on the street, but the space between the two tracks had not been leveled up or fitted for travel with wagons.

The business of the canning company not having been financially successful, and the corporation having a large indebtedness, all of which had been guaranteed by the stockholders in proportion to the amount of stock held by them respectively, the company, in the early part of 1891, sold and conveyed the factory with its appurtenances to the plaintiffs

3—150 ILL.

at an agreed price, and during the canning season of the year 1891, the business of the factory was carried on by them.

The evidence tends to show that, during the summer of 1891, weeds and grass had been permitted to grow on the street in the space between the two tracks, and also on the side-track, and that on October 28, 1891, the day of the fire, dry weeds, grass and other combustible material was permitted to be and remain, both in the space between the two tracks and on the side-track. A few minutes before two o'clock in the afternoon of the day last mentioned, an engine on the defendant's railroad drawing a passenger train left the station at Paxton going west. The canning factory was within the city of Paxton and near its westerly boundary, and about 2700 feet westerly from the passenger station. The train that day was about two hours late, and was running at about twenty-five miles per hour as it passed the canning factory, and was rapidly increasing its speed. Some ten or fifteen minutes after the train had passed, as the testimony of several of the witnesses tends to show, smoke was seen to arise from the dry grass and weeds on the side-track in front of the factory, and the fire thus set soon after was carried to the factory and destroyed a large part of the property.

The first point made is, that there is a material variance between the plaintiff's declaration and the proofs, in this, that while the declaration alleges that the buildings and property destroyed were situated on block 46 in Mix's addition to Paxton, the evidence shows that the buildings extended some four feet over into the street. To this objection there are two sufficient answers. The declaration contains several counts, and while the first count alleges that the buildings stood on block 46, the other counts contain no such allegation. If then there is a variance between the description of the property in the first count and the proof, such variance does not apply to the other counts, and the recovery may be sustained under those counts. In the next place, at the beginning of

the trial it was admitted by both parties, among other things, "that plaintiffs' property known as the canning establishment fronts upon Holmes street, and is situated on block 46 of Mix's addition to Paxton." After such admission, the defendant can not insist that the property was situated otherwise than as thus admitted.

It follows from the same reasons that the court properly refused to instruct the jury, at the instance of the defendant, that if any part of the buildings destroyed were in Holmes street, then as to such part, the plaintiffs could not recover; or did not err in instructing the jury, at the instance of the plaintiffs, that if they believed from the evidence that some of the buildings destroyed extended into the street, that fact could not of itself prevent the plaintiffs from recovering for the property so on the street, provided they believed from the evidence that the fact of their so extending into the street did not of itself contribute to the setting or spreading of the fire.

It is next insisted that the court erred in admitting in evidence an ordinance of the city of Paxton limiting the speed of passenger trains within the city to ten miles an hour. One count of the declaration set out this ordinance and alleged that by means thereof the sparks were thrown from the engine which set fire to the plaintiffs' property. We are able to see no good reason why this ordinance should not have been admitted, especially in view of the evidence tending to show that a high rate of speed was more likely to result in the emission of sparks or coals from the engine.

The plaintiffs' counsel also offered in evidence the ordinance of the city of Paxton granting to a railway company, of which the defendant is the successor, the right to lay its track in Holmes street, and imposing upon it certain burdens in relation to keeping the street in repair, etc. This ordinance was objected to on the ground that it was not set up or pleaded by the plaintiffs in their declaration. This objection was overruled, and the ordinance was permitted to be read to

the jury, but the plaintiffs, before their evidence was closed, voluntarily withdrew it, and the jury were instructed by the court to disregard it. It was not necessary, in our opinion, that this ordinance should be pleaded in order to make it admissible in evidence for the purpose for which it was offered. No right of recovery was sought to be based upon it, but it was merely introduced as collateral proof, tending to show by what right the defendant had constructed and then maintained its railway tracks in the street, and its duty in respect to restoring the street to its former condition, and thereafter keeping it in repair. If the defendant's right of way had been obtained by condemnation, or by grant from the owner, it would not have been contended, we think, that to make it competent for the plaintiffs to prove, as a collateral fact, the nature and extent of the defendant's right, or the burdens imposed upon its exercise, it would have been necessary to plead the condemnation proceedings or the private grant. And we are unable to see that the rule should be different where the defendant's title happens to be derived from a municipal corporation, or to have been granted by ordinance.

But it is urged that the ordinance was immaterial, and that its admission, when taken in connection with the evidence tending to show a failure on the part of the defendant to perform the duties which it imposed, had a tendency to prejudice the jury against the defendant. It is true, by the terms of the ordinance, the defendant was required to restore the street to as good a condition of repair as possible after the construction of its railway, and to make and keep in repair a good and sufficient wagon road on each side of its track, and the evidence tends to show that the duties thus imposed had not been performed, but that the street between the defendant's main-track and its side-track in the vicinity of the canning factory, had been left rough, and not susceptible of being travelled with wagons. But as it is not claimed that the loss of the plaintiffs' property by fire resulted in any way,

either directly or indirectly, from the defendant's failure of duty in those respects, and as there is no evidence tending to sustain that conclusion, we are unable to see that any material injury could have resulted to the defendant from the admission of the ordinance.

It is urged in the next place that the court erred in admitting evidence tending to show that dry grass, weeds and other combustible material had been permitted to accumulate and remain in the street in the space between the main-track and the side-track, and also on the side-track. The contention is, that the street, outside of that portion of it actually occupied by the two railway tracks, constituted no part of the defendant's right of way, within the meaning of that section of the statute which makes it the duty of all railroad companies to keep their right of way clear from all dead grass, dry weeds or other dangerous combustible materials. 2 Starr & Cur. 1933. It is accordingly argued that the burden of caring for Holmes street in this respect, and of keeping it free from dry grass, weeds and other combustibles was upon the city of Paxton and not upon the defendant. Admitting this contention so far as it applies to all portions of the street except those actually occupied by the defendant's railway tracks, and the conclusion sought to be reached, in our opinion, does not follow.

If it be admitted that the negligence in allowing dry grass and weeds to remain in the street was that of the city, and that such negligence contributed to the loss by fire of the plaintiffs' property, a case is presented where the negligence of a third party has concurred with that of the defendant in producing the injury complained of. Where an injury is the result of the joint operation of the negligence of several parties, either party thus negligent may be made answerable for the entire injury. All who contribute to a tort are liable to the person injured, each for the entire damage and it can not be apportioned. Bishop's Non-Contract Law, sec. 522.

But even if it should be admitted that the negligence of the city was not of such character as to render the city liable for the destruction of adjacent property by fire, we are unable to see that the responsibility of the defendant would be in any degree lessened or modified. The case would then be like any other where combustible material is allowed to accumulate and remain on the premises of a third person adjoining the right of way of a railway company, and sparks negligently emitted from its engine sets a fire which spreads and is communicated to other property more distant.

But there is another reason why the evidence of dry grass and weeds remaining in the space between the two tracks could not have resulted in any injury to the defendant, even if it should be admitted that such evidence was immaterial. It was not contended at the trial nor is it now, that the fire started in the grass and weeds between the two tracks, or that the combustible material there situate contributed in the slightest degree to the fire. The plaintiffs' counsel insist that, according to the great preponderance of the testimony, the fire originated on the side-track, and spread from that point to the canning factory, while counsel for the defendant insist that, as shown by the preponderance of the testimony, it started in a pile of husks lying wholly outside of the street and upon the plaintiffs' premises. It not being pretended therefore that the combustible material in the street, other than that on the defendant's side-track, contributed in the least to the fire, the evidence of the existence of such material could manifestly have had no influence with the jury.

We are of the opinion that so much of the street as was actually used and occupied by the defendant for railroad purposes constituted a part of its right of way, within the meaning of the statute above referred to, and that it was required to keep so much of the street free from dead grass, dry weeds and other dangerous combustible material, the same as the other parts of its right of way. And this seems to have been

the view taken by the trial court, and laid down in the instructions to the jury. Thus, in the first instruction given at the instance of the plaintiffs it was held that, the right of way of a railroad company over and upon the street in a city includes all that part of the street held and in actual use by such railroad company for its main-track, side-tracks, switches and turn-outs, that is in anywise connected with its main track, and used by such railroad company for loading and unloading cars, or for storing cars; and by the third instruction it was held that it was the duty of all railroad corporations to keep their right of way clear from dead grass, dry weeds and other dangerous combustible material. These instructions, in our opinion, laid down the rule applicable to the case correctly, and in view of such instructions, as well as for the reasons already given, the jury could not have been prejudiced by the evidence of dry grass, etc., in the street.

Complaint is made of the admission of the testimony of several witnesses tending to show that on the same day on which the plaintiffs' property was burned, several other fires were set from sparks emitted by the same locomotive engine within a few miles of Paxton. We think this evidence was proper. The defendant had introduced evidence tending to show that the engine was in good repair, that it was furnished with a suitable spark arrester, that it had been recently examined and found in good order, and that it was under the control of a competent engineer, and was being carefully operated. That the evidence above mentioned had a tendency to rebut the case thus made seems to us to be very clear. It tended to show that, notwithstanding the testimony of the defendant's witnesses, there must have been something wrong with the construction, repair or management of the engine. The fact that on the same trip it was scattering fire all along the way, gives some occasion for the conclusion that the testimony of the defendant's witnesses could not have been true.

An instruction was given for the plaintiffs which held, as a matter of law, that it was not negligence on the part of the plaintiffs, as owners of the property in question, that they used their land or property in the same manner, or permitted it to be and remain in the same condition, in which it would have been used, or would have remained, had no railroad passed near it. This instruction was, in substance, in the terms of the statute, and we are unable to see any material objection to it.

Many other objections are made to the rulings of the court, both in relation to the admission of evidence and in the instructions to the jury. To notice them all in detail would extend this opinion to an unwarranted length. All we need say is, that we have carefully considered them all in the light of the arguments submitted by counsel, and are of the opinion that none of them have any substantial merit. Some of the rulings of the court may have been subject to some degree of criticism, but when viewed in the light of all the facts as they appeared at the trial, we do not think that any error was committed so prejudicial to the defendant in its effects, as to require or justify a reversal of the judgment and a re-trial of the case. The judgment of the Appellate Court will accordingly be affirmed.           *Judgment affirmed.*