BROWN *v.* BENSON, receiver.

McDOWELL *v.* BENSON, receiver.

1. The additional certificates filed by the clerk of the superior court showing the time at which that court adjourned, and consequently that the bills of exceptions were presented within the time required by law, the motions to dismiss the same are overruled.

2. Where, in a suit against the receiver of a railroad company to recover damages resulting from the burning of woodland by fire alleged to have originated from sparks thrown out by the locomotive, the negligence alleged was that the spark-arrester was out of order and unfit for use, and that the engine was defective and dangerous, and in consequence of the defective condition of the spark-arrester and engine, sparks and cinders were emitted in dangerous quantities, etc., such allegations were broad enough to admit evidence touching the condition of the grates of the engine at the time of the fire; and accordingly, it was error to rule out testimony to the effect that on the day of the fire the grates of the engine were burned out, and large quantities of fire would fall out of the firebox down on the track.

3. Evidence showing the condition of the spark-arrester of the same engine just preceding and a short while subsequent to the date of the fire, and also that other fires were caused prior thereto by the same engine, was admissible as showing the condition of such engine at such times, from which, in the absence of testimony showing that the locomotive was in proper condition at the time of the fire, the jury might infer that the defective condition of such engine existed at the date of the fire.

4. The testimony admitted, together with that improperly excluded, was sufficient to send the case to the jury for them to determine whether or not the fire originated from sparks thrown out by the locomotive of the defendant, and whether or not at the time of the fire the defendant was negligent in that the locomotive was not in proper and reasonably safe repair; and therefore it follows that the court erred in granting a nonsuit.

Submitted June 22, — Decided July 10, 1897.

Actions for damages. Before Judge Reese. Hart superior court. September term, 1896.

These two suits were brought against the receiver of the Hartwell Railroad Company, for damages resulting to the plaintiffs by the burning of their woodlands by fire which they claimed to have been thrown out from the locomotive of a train running on the railroad. A nonsuit was granted; to which ruling, and to two others hereafter noted, exceptions were taken.

The testimony was, in brief, as follows: About ten o'clock on the morning of April 21, 1894, the train running from

48

Hartwell to Bowersville passed by one Heaton who was plow-
ing in a field.   About five or ten minutes afterward, his atten-
tion was attracted to a call of fire down the railroad 350 yards.
He was in plain view of the place where the fire originated.
He saw no fire there before the train passed.   The wind was
blowing.   He could not put out the fire.   It appeared to have
caught four feet from the road-bed, and spread to a pile of
rotten cross-ties on the right of way, and had burned over a
space as large as the court-room when he reached there.   The
wind was blowing hard from the southwest, blowing smoke
from the stack of the engine over on the ground, and on the
same side the fire originated.   The engine was the "Nancy
Hart."   Heaton was in plain view of the place where the fire
started.   There was no evidence of fire there until immedi-
ately after the train passed.   The fire spread from the railroad
to the land of each of the plaintiffs, first over McDowell's,
then over Brown's.   By the fire these lands were damaged from
three to four dollars per acre, being that much reduced in value
thereby.   The lands were heavily covered with leaves, trash
and litter.   Plaintiffs' title-deeds were in evidence.   Powell
was brakeman on the railroad at the time of the fire.   About
the 1st and not later than the 10th of April, 1894, he noticed
this engine throwing out of the stack large quantities of
sparks.   In February it threw out sparks and set afire his
clothes and some waste on a car.   At night from the 1st to the
10th of April preceding the fire on the 21st, they were hauling
freight at nights, and large quantities of sparks were thrown
out.   The stack was in a defective condition at those times.
On the day of the fire the grates of the engine were burned
out, and large quantities of fire would fall out of the fire-box
down on the track.   It was not repaired until McDonald re-
paired it in July.

Defendant moved to rule out Powell's testimony, because it
was too remote to show the condition of the smoke-stack at
the time of the fire, and because the declaration "did not set
out defective grates."   The motion was sustained.   (The neg-
ligence alleged in the declaration was, that the engine was de-
fective and dangerous; the spark-arrester in its smoke-stack

was out of order and unfit for use, and it threw sparks danger-ously; which facts were known to defendant, or could have been known by reasonable care and attention on his part; "and in consequence of the defective condition of said spark-arrester and engine," sparks and cinders were emitted in such quantities as to render dangerous to the property all along the line of the railroad, and especially to such inflammable mate-rial as dry grass, weeds, dead broom-straw and combustibles as were carelessly and negligently permitted to grow and ac-cumulate on defendant's road-bed and right of way, which was in close proximity to petitioner's land; but defendant and his servants negligently used "said defective engine," whereby said fire was caused, etc.)

McDonald swore, that he was a machinist, and repaired the smoke-stack of the engine on the Hartwell Railroad on July 4, 1894. It had a hole in the stack about "as large as your thumb." He noticed other holes in it that had bolts run through them. In December of the same year he patched an-other hole of the same size. Large sparks would come out of these holes. No other work had been done on the stack, that he could see. On defendant's objection, this testimony was ruled out, because it failed to show that the stack was defective on April 21, 1894.

O. C. Brown and J. H. Skelton, for plaintiffs.
Asbury G. McCurry, for defendant.

LITTLE, J. These two cases involving the same facts, and necessarily governed by the same principles of law, were con-solidated and argued together in this court. The case of Brown v. Benson, receiver, has heretofore been passed on by this court. Practically the same evidence is here now in both cases as was in the former record of that case. Then the judge below granted a nonsuit in the case, which was reversed by this court. See 98 Ga. 372. A nonsuit was also granted in the present cases, and exception is taken thereto, and also to certain rulings of the court, which we will now consider.

1. There was a motion to dismiss the writs of error in these cases, because they did not show that the bills of exceptions

were certified within the time prescribed by law. The additional certificates, however, filed by the clerk of the superior court, show at what time the court adjourned. From this certificate it now appears that the bills of exceptions were presented within the legal limit of time; and the motion to dismiss must therefore be overruled.

2, 3. The petitions in the cases allege that the defendant injured and damaged the plaintiffs by fire burning over their land on the 21st day of April, 1894, and that such burning was occasioned by fire thrown out from the locomotive of the defendant by his negligence. The negligence alleged was, that the spark-arrester was out of order and unfit for use, and that the engine was defective and dangerous, and in consequence of the defective condition of the spark-arrester and engine, sparks were emitted in dangerous quantities, etc. Under this declaration, evidence of Powell, a brakeman on the train at the time of the fire, to the effect that about the 1st, and not later than the 10th of April, 1894, he noticed this engine throwing out large quantities of sparks; that in February it threw out sparks and set afire his clothes and some waste on a car; from the 1st to the 10th of April preceding the fire on the 21st, they were hauling freight at night and large quantities of sparks were thrown out; the stack was in a defective condition at those times; on the day of the fire the grates of the engine were burned out, and large quantities of fire would fall out of the fire-box down on the track; it was not repaired until McDonald repaired it in July,—was, on motion, ruled out by the court, because it was too remote to show the condition of the smoke-stack at the time of the fire, and because the declaration did not set out defective grates. The testimony of McDonald, who swore that he was a machinist and repaired the smoke-stack of the engine on the Hartwell Railroad on July 4th, 1894; that it had a hole in the stack about as large as your thumb; he noticed other holes in it that had bolts run through them; that in December of the same year he patched another hole of the same size; that large sparks would come out of these holes; that no other work had been done on the stack that he could see,—was also ruled out by the court, because

it failed to show that the stack was defective in 1894. In our. judgment, the evidence of these two witnesses was improperly excluded by the court. The plaintiffs, if they were entitled to recover at all, could only recover by showing that the defendant was guilty of negligence, either by operating his locomotive when it was in an improper and dangerous condition, or that, being in good condition, it was improperly handled in its operation. The petition specifically alleged that the spark-arrester was out of order and unfit for use, and that the engine was defective and dangerous, and in consequence of such defects, sparks and cinders were emitted in dangerous quantities. It will be noted that the alleged defects went not only to the spark-arrester but to the locomotive itself, it being alleged that it was defective and dangerous. It will be noted that the word "engine" is used in the petition and by the witnesses in a colloquial and not in a technical sense, intended to describe the locomotive-engine or machine which drew the cars. Perhaps the term might have been restricted to its technical meaning had it been so desired by the defendant; but as used in the pleadings and throughout the trial of the case, it must be considered as referring to the entire machine. In such a sense, the "grates of the engine" would be understood not to mean any part of that particular contrivance by which the steam itself is applied to the wheels, but as one of the component parts which go to make up and complete a machine in position to propel railroad-cars by steam. In such a sense the grates of the engine are certainly parts of that machine, and in cases of this character very important parts. An allegation as used here, that the engine was defective and dangerous, was broad enough to cover a defect in the grates. The allegations in the petitions were broad enough to admit this evidence; it was material, and it was therefore error to have excluded it. In ruling out the testimony of Powell and McDonald, the court did so for the reason, in addition to that above stated, that Powell's testimony was too remote to show the condition of the smoke-stack at the time of the fire, and that McDonald's evidence failed to show that the smoke-stack was defective on April 21, 1894, the date of the fire. The effect of Powell's

testimony was, that this engine from the 1st to the 10th of April was in a defective condition; that it threw out of the stack large quantities of sparks; that in February preceding it threw out sparks and set fire to waste on a car, and that it was not repaired until McDonald repaired it in July. If these facts were true, they clearly establish the proposition that on the 21st day of April, 1894, the locomotive was in an improper and defective condition, because its condition was shown in February to be bad and from the 1st to the 10th of April to have been bad, and that it had not been bettered until the succeeding July. We are not now on the question as to whether fire was set out by the engine on the day named, but are to consider the question of the condition of the locomotive on that date; and when it is shown that such condition was bad two months previously and ten days previous to the fire, and that no repairs or change had been made in the machine until three months following the fire, the condition of the locomotive is presumptively shown to be bad at the date of the fire. The testimony was admissible and relevant to the question at issue, and its weight was for the jury. Following the testimony of Powell, McDonald swore that he was a machinist; that in July he found, when he was called to repair the locomotive, certain defects in the machine, and that these defects were sufficient to emit large quantities of fire. As tending to show that fire was set out by the defendant, it has been held competent to prove that at various times before the fire occurred, the engines of the company set out fires along its line in the vicinity. 91 U. S. 454; 144 Pa. St. 461; 32 N. Y. 339; 49 N. Y. 420; 23 Pac. Rep. 820; 74 Cal. 323. Where the particular engine which set the fire is known and designated, proof that it set other fires is admissible. 79 Mich. 163. Where evidence is admissible of other fires, it must appear that the fires were not very remote from the fire causing the damage. If the fires are remote in time, it must appear that the machinery and appliances remained in the same condition of repair, or the evidence will not be admitted. 109 N. Y. 243. Reasonable latitude must of course be allowed. The purpose of such proofs would be defeated if they were confined

to the exact or precise time of the occurrence. 144 Pa. St. 461. It has been held competent to show that coals of fire had previously been dropped or been found on the track at or near the place where the injury occurred. 10 R. I. 22; 11 Kan. 47. Where the plaintiff seeks to confine the setting of the fire to a single engine, proof that the same engine set other fires is admissible. 87 Mo. 117; 16 Kan. 252; 12 Ind. App. 691; 150 Ill. 27. That evidence of other fires set out by the same engine is admissible as tending to show negligence, and that former fires by the same engine are admissible as evidence tending to prove its continued condition or construction, see 79 Mich. 163; 60 Mo. 227; 76 Va. 443; 58 Wis. 335; 60 Iowa, 215; 68 Iowa, 502; 4 Md. 242; 27 Fla. 1; 3 Elliott on Railroads, §§ 1243, 1244.

4. The testimony of the witness Heaton which was admitted, and that of the witnesses which was excluded, was sufficient to send the case to the jury. It was incumbent upon the plaintiffs to show that the fire was occasioned by sparks emitted from the engine, or otherwise coming from that machine. As we have before seen, some of the excluded evidence that the same engine had previously set out fires was competent to go to the jury, and in certain limits it might be inferred that the fire in question was caused from the same source. Whenever the plaintiff shall have shown by satisfactory evidence that the fire originated from this source, the law presumes the defendant to have been negligent in operating a defective locomotive, or in improperly handling it, if it was in good condition. The question of the source of the fire under this evidence and of the negligence of the defendant is to be considered and passed on by the jury. As to the rules of law governing the liability of railroads in such cases, see the case of *G., J. & S. R. R.* v. *Edmondson*, ante, p. 747. We are clear that these cases should have been sent to the jury. The evidence which was excluded by the court should have gone to them and been considered in connection with the testimony which was admitted. The grant of the nonsuits was therefore error; and the judgments in the respective cases are

　　　　*Reversed. All concurring, except Cobb, J., disqualified.*