5262.   ATLANTIC COAST LINE RAILROAD COMPANY
*et al. v.* McELMURRAY BROTHERS, for use, etc.

1. Where a demurrer to a petition is overruled, and thereafter, during the trial, the plaintiff voluntarily strikes from the petition objectionable matter, thus curing the defect pointed out in the demurrer, the judgment overruling the demurrer will be affirmed, if the petition as thus amended is not subject to demurrer.

2. Where a new trial is awarded on the ground that the evidence demanded a verdict in favor of the defendant, the case stands for trial de novo, and the fact that the plaintiff relies for recovery upon the same allegations does not make appropriate a plea of res judicata.

3. There was some evidence which authorized a finding that the spark-arrester of the engine which set out the fire was defective.

4. Primarily, the construction of a rule of a railway company is for the court; but where the rule is ambiguous, and conflicting parol evidence is introduced to explain it, the court may take the advice of the jury on the proper construction to be given the rule. In the present case there was evidence which authorized a finding that, under the railway company's rule introduced in evidence, trains could not be operated at a speed exceeding six miles an hour either on the bridge over the Savannah river or on the approaches thereto.

5. The evidence did not authorize a finding that the engine was improperly handled, nor, under the evidence, could the fact that the train was operated on the trestle at a speed from eight to ten miles an hour be regarded as the proximate cause of the damage.

6. It was erroneous to admit in evidence a package containing sparks and cinders, it not appearing that they emanated either from the engine which set out the fire or from any other engine of the company which it was alleged caused the damage.

7. It was not prejudicially erroneous to fail expressly to instruct the jury not to consider an allegation of negligence in the petition, which had been eliminated by amendment.

8. There being no evidence of any improper handling of the train, nor that the violation of the company's rule contributed to the damage, it was error to submit these issues to the jury.

9. One railway company may lawfully acquire the right to operate its trains over the tracks of another railway company, and, where both are sued jointly in a negligence action, it is error to charge the jury that it was a violation of a public duty for one of the railway companies to operate trains over the tracks of the other, it not appearing that the right so to do was not lawfully acquired.

10. If the plaintiffs are entitled to recover, the verdict should be in a lump sum, for the market value of the property destroyed, with interest from the time the cause of action arose, and such actual expenses as the plaintiffs were required to incur in attempting to put out the fire.

DECIDED JANUARY 20, 1914.

Action for damages; from city court of Richmond county—Judge W. F. Eve.   October 4, 1913.

*W. K. Miller,* for plaintiffs in error.

*J. C. C. Black Jr.,* contra.

POTTLE, J. This is the third verdict in the plaintiff's favor in this case. A previous finding was set aside on the ground that the evidence demanded the conclusion that the presumption of negligence arising against the defendant upon proof of the setting out of the fire had been rebutted. *Atlantic Coast Line R. Co.* v. *McElmurray,* 12 *Ga. App.* 233 (77 S. E. 2). At the next trial the plaintiffs amended their petition so as to allege that just before setting out the fire the defendant's train had crossed the Savannah river from South Carolina into Georgia, over a long trestle and an iron bridge which contained a draw, and that in operating the train the engineer violated the State statute which required the train to be operated on the bridge at four miles per hour, and also violated a rule of the Charleston & Western Carolina Railway Company, the owner of the bridge, which limited the speed of a train on the bridge and its approaches to six miles per hour. A demurrer to this amendment was overruled, but subsequently the plaintiff struck so much of the amendment as charged a violation of the State law, leaving the allegation to stand that the rule of the railway company had been violated, and that the train was being run at such a rate of speed and in such a manner as unnecessarily and negligently to increase the volume of sparks emitted from the engine. After the plaintiffs struck from their petition the allegation that the State statute had been violated, the defendant filed what is denominated a plea of res adjudicata, averring therein that the case was controlled by the former decision, and that the plaintiffs ought not to be allowed to further maintain their action, because of the previous adverse decision of this court. After verdict the defendants filed a motion for new trial; and error is assigned upon the overruling of this motion.

1. There was no error in overruling the demurrer to the petition as amended. The position of counsel for the railway company in reference to the applicability and enforcement of the State statute which the plaintiffs pleaded is probably correct. As to this the plaintiffs' counsel either thought the point was well taken, or that it was sufficiently doubtful to render it wise to strike the allegation in reference to the State law. If, therefore, there was any error in overruling the demurrer to the petition as

amended, the error was cured by the subsequent striking from the petition of all the allegations in reference to the State law. No other ground of the demurrer was well taken. The allegations of the petition in reference to the negligence of the defendants were sufficient as against the demurrer filed.

2. The only effect of the previous decision of this court in this case was to send it back for a new trial. All that we held was that under the evidence then in the record, the plaintiffs were not entitled to recover; and even if the petition had not been amended, the plaintiffs were entitled to offer evidence in support thereof. If the evidence was substantially the same, the court, under the previous decision of this court, should have directed a verdict for the defendants, but under any view of it the plea of res adjudicata was properly overruled.

3. We have carefully considered the evidence in the record, in the light of the former decision of this court and in comparison with the evidence when the case was here before. It would serve no good purpose to discuss the evidence at length. It is sufficient to say that, while the great preponderance of the evidence appears to be with the defendants, we can not say there was no evidence to authorize a finding of negligence. When the distance the sparks travelled is considered, in connection with some of the expert testimony that small sparks would not travel this distance and set out fire, and that if sparks large enough to retain sufficient heat to ignite combustible matter after having travelled the distance which the sparks were shown to have travelled did set out the fire, the spark-arrester might be defective, it can not be said that there was no evidence to authorize the verdict. See *Hendricks* v. *Southern Ry. Co.,* 123 *Ga.* 342 (51 S. E. 415) ; *Southern Ry. Co.* v. *Williams,* 113 *Ga.* 338 (38 S. E. 744) ; *Central of Georgia Ry. Co.* v. *Trammell,* 114 *Ga.* 314 (40 S. E. 259).

4. It appeared, from the evidence, that at each end of the trestle which approached the iron bridge the railway company had placed a sign-board upon which appeared the words: "slow down to six miles an hour." There was also introduced a rule of the Charleston & Western Carolina Railway Company as follows: "All trains will come to a full stop before crossing drawbridges, whether the signals give the right to proceed or not. After stopping, they will proceed if the way is clear. Six miles an hour

while crossing Savannah river and Whale branch bridge." Primarily, the construction of the rule was for the court, but in case of ambiguity (which is always subject to explanation by parol evidence), there is no reason why the court should not take the opinion of the jury upon the proper construction to be given the rule. Indeed, this would seem to be the better practice, even if the court is not bound to submit the construction to the jury. If the sign-boards constituted the only evidence of the rule, we think it would be manifest that all that was meant was that when the engineer came within sight of the sign-post he should immediately begin to slow down his train, so as not to exceed six miles per hour on the bridge proper, and to be able to come to a full stop before reaching the draw; but the language of the rule, in connection with the construction placed upon it by one of the plaintiffs' witnesses, authorized the jury to find that it was a violation of the rule to operate the train at a speed exceeding six miles per hour anywhere on the bridge or its approaches. Under this view of the evidence, it did not require a finding, as contended by counsel for the defendants, that the engine did not exceed the maximum rate of speed required by the rule.

5. In view of what has been said above in reference to the evidence of negligence, it is immaterial, so far as this branch of the case is concerned, whether the violation of this rule of the company was a contributing cause of the damage to the plaintiffs' property. The plaintiffs' witness testified that when the train passed him on the trestle it was running from eight to ten miles an hour, and throwing out great volumes of sparks. It is not explained just why an engine running eight miles an hour would throw out more sparks than one traveling six miles per hour. In fact, some of the evidence indicates that a rapidly moving engine emits fewer sparks than one moving slowly. The evidence does not disclose any improper operation of the engine, but, on the contrary, demanded a finding that the train was properly handled, except in so far as the rule above referred to was violated. It was certainly not negligence to stop the train at the drawbridge; and if the emission of sparks was the natural and usual result of starting a solid train linked together with automatic couplers, the plaintiffs were bound to take the risk incident thereto. The plaintiffs were not, however, required to assume the risk of damage due to defective machinery;

and, as we have said above, there was some evidence which authorized a finding that the spark-arrester was defective.

6. It not appearing that the sparks and cinders introduced in evidence were emitted from the engine which set out the fire, or even from an engine of the railway company which it is claimed caused the damage, it was erroneous to admit such sparks and cinders in evidence. *Akins* v. *Georgia R. Co.,* 111 *Ga.* 815 (35 S. E. 671) ; *Brown* v. *Benson,* 101 *Ga.* 758 (29 S. E. 215) ; *Southern Pine Co.* v. *Smith,* 113 *Ga.* 633 (38 S. E. 960).

7. The court charged the general rule in reference to the presumption of negligence against the railroad company upon proof of the setting out of the fire. The charge as given was not erroneous because the judge failed to charge the jury that the negligence must be the proximate cause of the injury; nor would the statement in the charge that the company would be presumed to be guilty of all the acts of negligence alleged in the petition be erroneous because the plaintiffs had abandoned their claim that the defendant had violated a State statute. This charge of negligence having been wholly eliminated from the case, it could not have been prejudicial to fail expressly to state that this alleged act of negligence need not be considered. The fact that the train was one employed in interstate commerce would not prevent the rule in reference to the presumption of negligence from applying. The State legislature has the power to prescribe rules of evidence to be applied in the trial of all cases in the State courts, and the statute in reference to the presumption of negligence applies equally to railroads engaged in interstate and intrastate commerce. *Small* v. *Slocumb,* 112 *Ga.* 279 (37 S. E. 481, 53 L. R. A. 130, 81 Am. St. R. 150).

8. The court charged the jury as follows: "I further charge you that ordinary care in the operation of a locomotive is a relative term, and, in determining whether such care has been exercised, it is proper to take into consideration, together with the other circumstances then prevailing, the speed of the train, the condition of the weather, as to whether it was dry or windy, the inflammable character of the property near the track, and the use of an unusual amount of steam, whereby an undue quantity of sparks were emitted. In determining whether ordinary care and diligence has been exercised, you are to consider all the circumstances existing

at the time of the injury." This charge was abstractly correct. *Western & Atlantic R. Co.* v. *Maynard,* 139 *Ga.* 407 (77 S. E. 399). We think, however, that the assignment of error on the charge, that it was inapplicable to the case, was well taken. There was nothing in the evidence to authorize a finding that the train was improperly operated, and that this was the proximate cause of the damage. The trial judge also instructed the jury in reference to the violation of the rule of the company limiting the speed of the train to six miles per hour. This charge, we think, was also inapplicable. As stated above, it was not negligence to stop the train at the drawbridge; and if it became necessary, in stopping the train, to emit larger quantities of sparks, the plaintiffs were bound to take the risk of damage resulting from this method of operation. There is in the evidence nothing to show that a larger volume of sparks was emitted than was necessary, nor does the evidence authorize a finding that the operation of the train on the trestle at from eight to ten miles an hour was the proximate cause of any damage to the plaintiffs. The only theory, under the evidence, upon which recovery can rest is that the defendant's spark-arrester was defective, and the instructions in reference to negligence should have been confined to this theory.

9. The trial judge should not have charged that it was a violation of a public duty for the Charleston & Western Carolina Railway Company to permit the Atlantic Coast Line Railroad Company to use its track. It would have been proper to charge that the owner of the track would be jointly liable with the owner of the train for the latter's negligence. *Macon & Augusta Railroad* v. *Mayes,* 49 *Ga.* 355 (15 Am. R. 678); *Central Railway Co.* v. *Passmore,* 90 *Ga.* 203 (15 S. E. 760). But in the absence of proof to the contrary, it should not have been assumed that the Atlantic Coast Line Railroad Company was using the track in violation of law or of the rights of the public. It is not unlawful, under all circumstances, for one railway company to use the tracks of another. The right so to do may be lawfully acquired, and the court should, in the absence of proof to the contrary, assume that it has been so acquired.

10. If the plaintiffs were entitled to recover at all, they were entitled to recover in one lump sum the market value of the property destroyed, with interest from the time the cause of action

arose, and such actual expenses as the plaintiffs were required to incur in attempting to put out the fire. *Albany & Northern Railway Co.* v. *Wheeler,* 6 *Ga. App.* 270 (64 S. E. 1114).

*Judgment reversed.*