8082.   TALLULAH FALLS RAILWAY CO. *v.* STRIBLING.

1. There is no merit in the general grounds of the motion for a new trial, as the evidence sufficiently supports the verdict.

2. The court did not err in admitting in evidence the records of the defendant company, showing that the particular locomotive alleged to have caused the destruction of the plaintiff's property at the time stated in the petition was the same engine that set out similar fires in the same locality on subsequent occasions, extending over a number of months, and in allowing testimony as to such subsequent fires.

(*a*) The evidence was admissible to rebut testimony that the locomotive in question was equipped with a sound standard spark-arrester, sufficient to preclude the possibility that it originated the fire for which damages were sought.

(*b*) It being shown that a continuous series of subsequent fires were

communicated or caused by the engine that produced the fire complained of, evidence as to such fires was not too remote because of the absence of proof that the condition of the locomotive or its machinery and attachments had remained the same in all particulars throughout the entire period. The relevancy of the more remote fires may have been slight, but the testimony was admissible in the absence of anything to even suggest that the condition of the machinery had altered since the date of the fire complained of, especially in view of the testimony for the defendant that a standard spark-arrester was then attached to the locomotive, and of the direct testimony of another witness that on that particular occasion the engine, though alleged to have been thus equipped, was seen to emit sparks and did actually set out fire near the plaintiff's property. This testimony, taken together, tended to indicate that at least the condition of the spark-arrester remained unchanged throughout the entire period, since the engine emitted sparks during the whole time.

3. There is nothing in the record to indicate that the verdict was influenced by bias or prejudice; and since there was testimony to support the verdict, it can not be considered to be excessive.

4. In the absence of any timely written request, there is no merit in the grounds of the motion for a new trial complaining that the court failed to give in charge rules for estimating the plaintiff's damages, and failed to present to the jury a particular contention of the defendant.

DECIDED JUNE 27, 1917. REHEARING DENIED JULY 19, 1917.

Action for damages; from Habersham superior court—Judge J. B. Jones. September 14, 1916.

*I. H. Sutton, Sam Kimzey, Blanton Fortson,* for plaintiff in error. *J. C. Edwards & Sons,* contra.

WADE, C. J. 1. "To authorize a plaintiff to recover damages from a railroad company for the destruction of property by fire caused by the running of its locomotive, it must appear that such damage was occasioned by the fault or negligence of the company or its agents. If, without more, it should be shown that the fire was occasioned by operation of the locomotive, negligence on the part of the company would be presumed." *Gainesville &c. Railroad Co.* v. *Edmondson,* 101 *Ga.* 747 (29 S. E. 213).

(*a*) The circumstances in proof in this case were sufficient to support the inference that the fire which destroyed the apple orchard of the plaintiff was caused by the running of its locomotive attached to the particular train distinguished as number 12 in the petition, and thus created a presumption of negligence on the part of the defendant.

(*b*) It is true that where "the evidence only raises a suspicion

that fire was communicated to the property destroyed by the passing engine, and the uncontradicted testimony was that the engine was in good order and equipped with a proper spark-arrester in good condition" (*Gainesville &c. Railroad Co.* v. *Edmondson,* supra), no legal recovery can be had in the absence of any evidence "that in the handling of the engine sparks were emitted or fire thrown therefrom at the time, before, or after the conflagration for which damages are sought;" but in this case there was direct testimony from one witness that the particular locomotive alleged to have communicated the fire to the plaintiff's property did in fact emit sparks and actually set fire to "grass and broom-sedge and stuff" on the railroad right of way on this same occasion and immediately after the engine had passed the point where the plaintiff's property caught fire and within a short distance therefrom,—"possibly a couple of hundred yards."

The engineer testified as follows: "When I passed along there [on February 17, 1913, the date of the fire] I saw a pile of ties on fire on the right-hand side going north from Mrs. Stribling's place." On cross-examination he testified: "I didn't set out any fire that I know of. I just happened to see the smoke from the ties that day. I know my engine didn't set out that fire, because it was there when I went along. I don't think the wind was blowing very much. I can't say positively about that." It is insisted by counsel for the plaintiff in error that this testimony amounted to direct and positive proof that the locomotive did not in fact set out the fire from which the plaintiff suffered, and that the circumstantial evidence supporting the inference that the fire was caused by sparks from this particular engine must yield to this uncontradicted and positive testimony of the engineer to the contrary. This contention is not well founded. In the first place, the engineer did not positively deny (except by the assertion that his engine was equipped with a standard spark-arrester and did not emit sparks on that day, which assertion was disputed by a witness for the plaintiff) that his engine had or may have set out the fire. To the contrary, he said that he "did not set out any fire that he knew of;" and though he added, "I know my engine didn't set out that fire," this was a mere conclusion or opinion, for he declared, as his reason for so stating, that "it was there when he went along." Other evidence abundantly shows that there was

a fire in some ties along or near the railroad-track not far from the point where the fire began which caused the damage, and this fire may have been the fire the engineer testified he saw when he passed. At all events, there was other testimony from which the jury could infer that the fire burning the old railroad ties was not in fact the fire which caused the damage. Again, it seems hardly necessary to suggest that the engineer's testimony that he did not set out the fire complained of, because he saw fire at or near this point when he went along, did not amount to testimony that the fire causing the damage to the plaintiff did not immediately follow the passage of his locomotive, *independently* of the fire seen by the engineer near this place. The engineer did not testify that the fire which damaged the plaintiff was burning at the time he passed, but only that he saw *a* fire burning near this point. Of course, it could not be expected that he would have seen the fire caused by the sparks emitted from his engine in passing, unless he had stopped his train and waited until a blaze thus kindled had spread sufficiently to be visible to him from the cab of his engine. Certainly his testimony that there was a fire at or near this point does not conclusively show that his engine did not produce or cause another fire at or near the same point which broke out *after* he had gone, and consequently without his knowledge; and hence this testimony at best amounted merely to a conclusion of the engineer, and, in view of the clear testimony of another witness that his engine did on that particular day and near that particular point emit sparks and set out another fire, could not be considered such a positive denial that his locomotive originated the fire sued for as would necessarily overcome the inference deducible from the circumstances in proof that his locomotive did in fact cause this fire.

(*c*) There was direct testimony that 335 apple trees were destroyed at the time by the fire, and that 140 had since died from its effects, and that these trees were nine years old and were worth $10 each at the time they were burned, and testimony that they were "worth anywhere from five to ten dollars each. . . They are worth close up to $10 each." This testimony amply warranted the verdict for $1,924.

There is therefore no merit in the general grounds of the motion for a new trial.

2. In the 4th ground of the motion for a new trial error is as-

signed because the court required the defendant to produce and admit in evidence its records showing the number of the engine which pulled its train number 12, covering a period from January 1, 1913, to July 21, 1914; and in the 5th, 6th, 7th, 8th, 9th, 10th, 11th, and 12th grounds of the motion error is assigned upon the admission in evidence, over the objection of the defendant, of certain testimony that the engine which pulled train number 12 on February 17, 1913, did on February 24, March 3, June 17, June 18, and November 21, 1913, and on January 14, April 6, April 27, and May 24, 1914, emit sparks which originated fires in the immediate locality and in close proximity to the point where the fire originated which destroyed the property of the plaintiff on February 17, 1913. This evidence was objected to as irrelevant and immaterial because it was not affirmatively shown that the condition of the engine was the same on the various other dates testified about as it was on February 17, 1913.

(*a*)  There is no merit in the ground of the motion complaining of the admission of the record of the defendant company, which was admissible for the purpose of establishing that the engine (number 73) which some circumstances tended to show caused the destructive fire of February 17, 1913, was the identical engine which had caused the various other fires occurring in close succession thereafter, and was directly in rebuttal of the testimony of the engineer and master mechanic of the defendant company that the said engine 73, which pulled train number 12 on February 17, 1913, was equipped with a standard spark-arrester which was in good condition on that date, and which would prevent the emission of sparks large enough to do damage by setting fire to adjacent objects.  The evidence was material to establish the identity of the engine which originated the various other fires with that of the engine which caused the fire complained of, and therefore was properly admitted. See, in this connection, *Akins* v. *Georgia Railroad & Banking Co.,* 111 *Ga.* 815 (35 S. E. 671), where it was held by the Supreme Court that "There was, on the trial of an action against a railroad company for damages alleged to have been caused by setting fire to the plaintiff's woods, no error in rejecting evidence warranting an inference that, shortly before or shortly after the day upon which a particular fire occurred, a locomotive of the company had thrown out sparks from

which straw had become ignited, there being no evidence in any· manner tending to show that this locomotive was run on the day in question." The converse would of course be true where there *was* evidence that the particular locomotive which had caused the other fires was the same locomotive which originated the fire and caused the damage sued for. See *Southern Pine Co.* v. *Smith,* 113 *Ga.* 629, 633 (38 S. E. 960) ; *Atlantic Coast Line R. Co.* v. *McElmurray,* 14 *Ga. App.* 196, 200 (80 S. E. 680).

(*b*) Evidence as to the other fires set by the same locomotive when drawing train number 12 on various dates after the day of the injury for which the plaintiff sued and extending from that date to May 24, 1914, more than a year thereafter, where the particular engine which set out the fire is designated by proof, was admissible in this case, though the relevancy of the more remote fires testified about may have been only slight, notwithstanding there was no specific testimony that the engine was in the same condition of repair from February 17, 1913, to May 24, 1914. "Reasonable latitude must of course be allowed. The purpose of such proofs would be defeated if they were confined to the exact or precise time of the occurrence. 144 Pa. St. 461 [22 Atl. 851, 16 L. R. A. 299, 27 Am. St. R. 652]. It has been held competent to show that coals of fire had previously been dropped or been found on the track at or near the place where the injury occurred. 10 R. I. 22; 11 Kan. 47. Where the plaintiff seeks to confine the setting of the fire to a single engine, proof that the same engine set other fires is admissible. 87 Mo. 117 [56 Am. R. 446] ; 16 Kan. 252; 12 Ind. App. 691 [40 N. E. 26] ; 150 Ill. 27 [37 N. E. 660]. That evidence of other fires set out by the same engine is admissible as tending to show negligence, and that former fires by the same engine are admissible as evidence tending to prove its continued condition or construction, see 79 Mich. 163 [44 N. W. 426] ; 60 Mo. 227; 76 Va. 443; 58 Wis. 335 [17 N. W. 132] ; 60 Iowa, 215 [14 N. W. 244] ; 68 Iowa, 502 [27 N. W. 478] ; 4 Md. 242 [59 Am. D. 72] ; 27 Fla. 1 [9 So. 666, 17 L. R. A. 33] ; 3 Elliott on Railroads, §§ 1243, 1244." *Brown* v. *Benson,* 101 *Ga.* 753, 758 (29 S. E. 215). The plaintiff relied upon proof of numerous fires set by this particular engine to show that it was not equipped with a proper and sufficient spark-arrester; and there was no testimony in behalf of the defendant company to indicate

or even suggest that the equipment of the engine with a spark-arrester, or the character or condition of the spark-arrester, was different in any particular on the day when the fire occurred from such equipment, character, or condition on each of the several successive dates when the same locomotive set fire to objects along or near the railroad right of way in the immediate vicinity where the injury to the plaintiff had previously occurred. There was in fact no other practical way for the plaintiff to rebut the testimony that the engine was properly equipped with a sound and sufficient spark-arrester than to show that this particular engine continuously, for a period of time immediately preceding or following the injury complained of, caused other fires in the same locality; and if the locomotive, at the time of this particular fire, was equipped with a different or better spark-arrester than on the other occasions when it was shown to have caused similar fires, this could have been established as matter of defense by the defendant company, which alone had the exact and definite knowledge at its command as to any variation in the condition of the engine at the different periods. Had proof of only one remote fire been offered, further preliminary proof that the condition of the locomotive was the same on that occasion as on the occasion when the injury sued for resulted *may* have been necessary, to make the testimony admissible, but here numerous fires were shown during a period of little more than twelve months, caused by the same locomotive, which locomotive the witnesses for the defendant testified was equipped with a perfect spark-arrester on the day when the plaintiff's property was destroyed; and we can not say that evidence even as to the more remote of these fires was wholly irrelevant and immaterial, in the absence (as suggested above) of anything to indicate any change in the condition of the locomotive or its attached machinery or parts, throughout the entire period, and in view of the evidence for the plaintiff that on the very day of the fire sued for, this particular locomotive, thus equipped (according to some testimony), was seen to emit sparks from which a fire originated near the plaintiff's property and just after passing her property. This evidence tended to show that even when equipped with a spark-arrester declared by the engineer and mechanic of the defendant company to be perfect and sufficient to completely prevent the passage of sparks, sparks were in fact emitted from the

locomotive, which actually produced a fire at the time and near the place where the plaintiff's property was destroyed; and hence the condition of the locomotive was also in effect shown to be the same at that time, as to causing fires, as it was on the subsequent occasions, when it likewise produced fires.

3. The 14th ground of the motion for a new trial complains that "the verdict was excessive and unsupported by the evidence, for the reason that the preponderance of the evidence showed that the damages suffered by the plaintiff, if any, were negligible." There was, as already stated, evidence to support the verdict returned, or even to support a verdict for a larger amount; and there is nothing in the record to suggest that the jury were influenced by bias or prejudice; and it was for *them* to determine with whom the "preponderance" of evidence rested. The exception itself suggested no other reason why the verdict should be considered excessive than the assertion that the preponderance of evidence showed that the damages were merely negligible.

4. In the absence of any timely written request for fuller and more specific instructions, there is no merit in the 15th and 16th grounds of the motion for a new trial, complaining that the "court failed to give in charge the rules of estimating the plaintiff's damages," and failed to present to the jury a contention of the defendant that the apple trees alleged to have been destroyed were practically worthless at the time of and before the fire. In the light of the testimony, and considering the nature and character of the issues presented by both the pleadings and the evidence for determination by the jury, the court was not required to give any particular instruction as to the measure of damages, or to present a contention of the defendant not raised by the pleadings and merely suggested by some of the evidence in its behalf.

In this case, if the jury reached the conclusion that the defendant was responsible for the destruction of the plaintiff's property, it was only necessary for them to determine further the value of the property destroyed, and no other measure of damages could have been suggested by the court, even upon request. The defendant's contention not specifically presented to the jury by the court was not definitely supported by any testimony going to show or even suggest how many of the trees alleged to have been destroyed by fire may have been defective before the fire occurred.

5. The court did not err in overruling the motion for a new trial. *Judgment affirmed. George and Luke, JJ., concur.*